

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
08/19/2016

| | | |
|---|---|---|
| IN RE: § | | |
| ATP OIL & GAS CORPORATION § | CASE NO: 12-36187 | |
|     Debtor(s) § | | |
| § | CHAPTER 7 | |
| § | | |
| OHA INVESTMENT CORPORATION; fka § | | |
| NGP CAPITAL RESOURCES COMPANY § | | |
|     Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 12-3443 | |
| § | | |
| BENNU OIL & GAS, LLC § | | |
|     Defendant(s) § | | |

## REPORT AND RECOMMENDATION

OHA Investment Corporation has filed a Motion to Dismiss the Amended Complaints in Intervention filed by Schlumberger Technology Corporation, *et al.* (the "M&M Intervenors"). (ECF No. 298, 299, 300, 303). As set forth below, the Court recommends that OHA's motion be granted.

### Background

The Court discussed the background of this case in detail in its Memorandum Opinion issued at ECF No. 293. In short, the M&M Intervenors assert that their statutory liens under the Louisiana Oil Well Lien Act ("LOWLA") attach to certain overriding royalty interests conveyed by ATP to OHA in June and December of 2011 and July of 2012. La. Stat. § 9:4861—4873 (2016).

In its May 13, 2016 Memorandum Opinion, the Court held that a lien under LOWLA would attach to the ORRIs transferred by ATP to OHA if (1) the liens were valid at the time of the transfer and (2) OHA took the ORRIs with notice of the liens as required by the safe harbor

provision of La. Stat. § 9:4869(1)(a). Even if the M&M Intervenors' liens attached before the transfer, if OHA took the ORRIs without notice of the liens, the safe harbor provision of LOWLA would extinguish the liens as to the ORRIs. (ECF No. 293 at 14).

In its Motion to Dismiss, OHA asserts that it did not have actual notice of the M&M Intervenors' liens at the time it paid ATP for the ORRIs, and argues that constructive notice is insufficient. The M&M Intervenors argue that (i) actual notice is not required; and (ii) if actual notice is required, that they have amended their pleadings to allege actual and constructive notice.

**Rule 12(b)(6) Standard**

The Court reviews motions under Rule 12(b)(6) by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to plaintiffs." *Stokes v. Gann,* 498 F.3d 483, 484 (5th Cir.2007) (*per curiam*). However, the Court "will not strain to find inferences favorable to the plaintiff." *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.,* 365 F.3d 353, 361 (5th Cir.2004) (internal quotations omitted).

To avoid dismissal for failure to state a claim, a plaintiff must meet Fed. R. Civ. P. 8(a)(2)'s pleading requirements. Rule 8(a)(2) requires a plaintiff to plead a "short and plain statement of the claim showing that the pleader is entitled to relief." In *Ashcroft v. Iqbal,* the Supreme Court held that Rule 8(a)(2) requires that the "well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct." 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Rule 8(a)(2)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "[A] complaint does not need detailed factual allegations, but must provide the plaintiffs grounds for entitlement to relief—including

factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 232 (5th Cir.2009) (internal quotations omitted).

## Jurisdiction

At a minimum, this Court has "related to" jurisdiction pursuant to 28 U.S.C. § 1334(b). Section 1334 provides that district courts have subject matter jurisdiction over all "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). With respect to bankruptcy cases that remain open, the Fifth Circuit has held that "it is not necessary to distinguish between proceedings 'arising under', 'arising in a case under', or 'related to a case under', title 11." *Wood v. Wood (In re Wood),* 825 F.2d 90, 93 (5th Cir.1987). The Fifth Circuit noted that § 1334(b)'s language operates "conjunctively to define the scope of jurisdiction." *Id.* Consequently, bankruptcy courts need only "determine whether a matter is at least 'related to' the bankruptcy." *Bass v. Denney (In re Bass),* 171 F.3d 1016, 1022 (5th Cir.1999) (citing *Walker v. Cadle Co. (In re Walker),* 51 F.3d 562, 569 (5th Cir.1995); *In re Wood,* 825 F.2d at 93).

Subject matter jurisdiction is determined at the time the complaint is filed. *Carney v. Resolution Trust Corp.*, 19 F.3d 950, 954 (5th Cir. 1994) (citing *Rosa v. Resolution Trust Co.*, 938 F.2d 383, 392 n. 12 (3d. Cir.), *cert. denied*, 502 U.S. 981 (1991)). The complaints in intervention were originally filed on December 13, 2012. At that time, ATP had not sold its assets and the ATP bankruptcy case was an active chapter 11 reorganization. The resolution of the M&M Intervenors' claims would have had an effect on ATP's bankruptcy estate. An adversary proceeding falls within the court's "related to" jurisdiction if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy."

*Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987) (citing *Pacor, Inc. v. Higgins (In re Pacor)*, 743 F.2d 984, 994 (3d Cir. 1984)).

If the M&M Intervenors succeed on the merits of their suit and are allowed to recover against OHA, the liability of the Debtor would be lessened.[1] The Fifth Circuit has held that "related to" jurisdiction exists in a suit between two creditors—as here—where success on the merits would reduce a claim against the bankruptcy estate. *See Fire Eagle, LLC v. Bischoff (In re Spillman Dev. Grp., Ltd.),* 710 F.3d 299, 304–305 (5th Cir. 2013). This is true even where the effect of third-party litigation on the bankruptcy estate is "attenuated [and] hypothetical." *Id.* at 305. The Court possesses subject matter jurisdiction over this adversary proceeding.

## Constitutional Authority

Although subject matter jurisdiction is proper in this Court, questions regarding an Article I judge's constitutional authority must be addressed. Under *Stern v. Marshall*, the Supreme Court held that whether a bankruptcy court can enter a final judgment in a case depends on whether the cause of action stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process. 131 S.Ct. 2594, 2618 (2011). This adversary proceeding involves state law claims between two non-debtor parties and would not necessarily be resolved in the claims allowance process. Furthermore, neither OHA nor the M&M Intervenors have consented to the entry of a final judgment. *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932 (2015) ("We hold that Article III is not violated when parties knowingly and voluntarily consent to adjudication by a bankruptcy judge.").

---

[1] Any M&M Lien attaching before June 21, 2010—the Senior Lien Cutoff Date—is senior in priority to any and all DIP financing liens. *See Hornbeck Offshore Servs., LLC v. ATP Oil & Gas Corp. (In re ATP Oil & Gas Corp.)*, 2016 WL 1533367 at *2 (Bankr. S.D. Tex. Apr. 11, 2016). Through the Asset Purchase Agreement with Bennu, the Debtor established a Senior Lien Escrow of $55,000,000.00 to pay off Senior Liens, with the Debtor's Estate retaining a contingent interest in the residual.

Although it is unlikely this Court possesses the necessary constitutional authority to enter final judgment, a court may still issue interlocutory orders. *Trevino v. HSBC Mortg. Serv. (In re Trevino)*, 535 B.R. 110, 125 (Bankr. S.D. Tex. 2015). In a multi-party suit like this adversary proceeding, "a court's order is final only if it meets one of two conditions: (1) it must adjudicate all the claims of all the parties, or (2) the court must expressly determine there is no just reason for delay and direct an entry of judgment under Rule 54(b)." *Riley v. Wooten*, 999 F.2d 802, 804 (5th Cir. 1993). This adversary proceeding involves additional parties with claims unrelated to those addressed in this Report and Recommendation. However, all claims with the exception of those addressed in this Report and Recommendation were resolved by an Order Approving Compromise in Case No. 12-36187 at ECF No. 3686. This Report and Recommendation disposes of the balance of claims remaining in this adversary proceeding.

Accordingly, because the Court lacks constitutional authority to enter a final order in this case, it issues this Report and Recommendation to the district court, recommending that the M&M Intervenors' claims be dismissed.

## Analysis

*Notice*

In its May Memorandum Opinion, the Court held that the safe harbor provision of § 9:4869(1)(a) applied to the transaction between OHA and ATP, and consequently, if OHA was not notified of the privilege by the M&M Intervenors before it purchased the ORRIs, then the liens were extinguished when OHA paid for its ORRIs. The safe harbor provision is republished here:

> (1)(a) The privilege is extinguished as to hydrocarbons that are sold or otherwise transferred in a bona fide onerous transaction by the lessee or other person who severed or owned them at severance if the transferee pays for them **before he is notified** of the privilege by the claimant.

9:4869(1)(a) (emphasis added). OHA seeks dismissal under the safe harbor, arguing that it purchased the ORRIs from ATP in a bona fide onerous transaction without *actual* notice of the privilege. OHA argues that for the liens to be valid against its ORRIs it must have received actual notice from the M&M Lienholders before it acquired the ORRIs from ATP.

For support, OHA cites § 9:4868 which sets forth the process by which notice is delivered to an operator under LOWLA:

> (B)(2) A notice is properly delivered to the operator if it is delivered to the operator who is properly identified in the statement of privilege.
>
> (C)   A notice is delivered when:
>
>> (1)   It is mailed by certified or registered mail properly addressed with sufficient postage affixed.
>>
>> (2)   If not mailed by certified or registered mail when either:
>>
>>> (a)   It is received by the person to whom it is sent.
>>>
>>> (b)   It is received at the office of the person to whom it is addressed.

§ 9:4868. An operator is defined under LOWLA as "a lessee who is personally bound by contract to the claimant or to a contractor from whom the claimant's activities giving rise to the privilege emanate." § 9:4861(6). The parties agree that OHA is not an operator under the LOWLA definition. However, OHA maintains that the notice requirement set forth in § 9:4868(C) remain relevant because it defines what is required for notice under the safe harbor provision of § 9:4869(1)(a).

LOWLA provides two procedures for providing notice. First, as discussed above, § 9:4868(C) prescribes a noticing procedure designed to notify operators. There is no indication

that a purchaser of an ORRI (which the Court has held is a purchaser of hydrocarbons for the purposes of LOWLA) is entitled to the same notice as an operator.  Second, § 9:4869(B) directs how a purchaser of hydrocarbons who *received* notice of a privilege attached to the purchased hydrocarbons before paying for them should proceed:

> (B) A purchaser of hydrocarbons **who is notified** of the claim to a privilege over them may retain the amounts owed for them without liability to the claimant or the transferor from whom he received them until he is:
>
> (1) Directed in writing by the claimant to release them or is advised by the claimant that the claimant no longer asserts a privilege over them.
>
> (2) Directed in writing to deliver them to the claimant by the person to whom the purchaser owes the obligation.
>
> (3) Directed in writing by the claimant and the person to whom the purchaser owes the obligation to deliver them to a third person or otherwise to dispose of them.
>
> (4) Ordered to make some disposition of them by the judgment of a court in an action in which the claimant and the person to whom the purchaser owes the obligation are parties.

§ 9:4869(B) (emphasis added).  The issue before the Court does not concern the notice provided to a purchaser of hydrocarbons who is already on notice regarding a claimant's privilege.  Instead, it is the initial notice—reflected in the emphasized language of §§ 9:4869(A)(1)(a) and (B)—that is at issue.  Neither of the two statutory notice procedures apply to the present situation, and LOWLA does not provide any applicable procedures for giving notice.  The Court declines OHA's invitation to import one provision of Louisiana law (§ 9:4868) into another (§ 9:4869(A)(1)).

When LOWLA was enacted in 1995, it replaced a previous version of the statute that included a similar notice provision for purchasers of hydrocarbons that had notice of liens at the time they purchased the hydrocarbons. Like LOWLA, the previous statute allowed a claimant to assert its lien against hydrocarbons in the possession of a purchaser if the claimant followed certain noticing procedures similar to those in § 9:4869(B). However, even in the prior statute, the purchaser must have been notified that the purchased hydrocarbons were subject to a lien. Though not included in LOWLA, the previous statute directed a purchaser of hydrocarbons to "withhold payments for such oil or gas . . . to the extent of the lien amount claimed until delivery of notice in writing that the claim has been paid." La. R.S. 4861.1 (1956). Neither LOWLA, nor the replaced 1956 statute, direct how the initial notice to the purchaser—that is, notice prior to the sale—should be accomplished. They only address how a claimant must give notice if it wishes to assert its lien against the hydrocarbons in the (already notified) purchaser's possession. This is why a purchaser who is notified of a lien must withhold the purchase price to the extent of the lien until such time the claim is paid or otherwise released.

The Court is left without statutory guidance concerning what kind of notice is contemplated by the safe harbor provision.

There is disagreement throughout the country regarding what type of notice is required when a statute does not specify. *Compare*, 58 Am. Jur. 2d Notice § 9 ("[w]here a statute requires notice to be given, but does not specify the type of notice, actual personal notice is required, and the notice must be personally served on the person to be notified.") *with id.* (citing *Garcia v. Indus. Comm'n of Arizona*, 141 Ariz. 184 (Ct. App. 1984) ("[i]n general, if a statute or rule requires that notice be given, but fails to specify a particular form of notice, that which will constitute sufficient notice will be liberally construed.")).

Two Louisiana cases provide limited support for liberally construing notice when a statute does not specify a procedure. In *Thomas v. Hollywood Casino*, the court noted that a prior version of the workers' compensation law that contained an unspecified notice requirement was construed broadly. 13 So.3d 717, 723 (La. App. 2 Cir. May 13, 2009). In broadly construing notice, the Louisiana Supreme Court concluded that "[w]hat constitutes notice will depend upon the facts and circumstances of the particular case." *LaCour v. Hilti Corp.*, 733 So.2d 1193 (La. May 18, 1999). Perhaps in response to the Louisiana Supreme Court's broad construction of notice, the legislature amended the statute to require actual notice. *Hollywood Casino*, 13 So.3d at 723. The legislature did not, however, declare that all instances of notice without a specified procedure in Louisiana statutes required actual notice. While neither *Hollywood Casino* nor *LaCour* addressed notice under LOWLA, they provide some indication that Louisiana courts construe notice according to the facts and circumstances of the case, unless instructed to do otherwise by statute.

Without a specified notice procedure in the statute or a consistent approach applied by courts generally, the Court will apply the "case specific" notice standard set forth in *LaCour*.

OHA makes a compelling argument that requiring a typical purchaser of hydrocarbons—a third-party buying a discreet volume of oil and/or gas—to conduct due diligence to determine the extent to which the hydrocarbons to be purchased are subject to a privilege would be unduly onerous. (ECF No. 310 at 10-13). Even the M&M Lienholders acknowledge as much. (ECF No. 316 at 11) ("The purpose of the safe harbor protections afforded to bona fide third-party purchasers of hydrocarbons under § 4869 is thus to shift to the lien claimant . . . the burden of providing notice to the third-party purchasers or risk losing the lien against the extracted hydrocarbons and the associated proceeds.").

The M&M Lienholders instead argue that a distinction should be drawn between a purchaser of a discreet volume of hydrocarbons and a purchaser of an ORRI—an interest in the sale of hydrocarbons. The former should be able to seek relief in the safe harbor provision absent conspicuous notice, while the latter should not be entitled to the safe harbor provision at all. The Court held in its May Memorandum Opinion that a purchaser of an ORRI was a purchaser of hydrocarbons for the purpose of LOWLA. (ECF NO. 293 at 14). Much of the M&M Lienholders' response to OHA's motion is directed at challenging the Court's prior holding. (ECF No. 316 at 8-11). Nevertheless, the M&M Lienholders have not demonstrated that the Court erred in its holding.

The policy considerations OHA raises (and the M&M Lienholders acknowledge) bear on the Court's analysis in determining the extent of the notice required under LOWLA. In order to give the safe harbor provision meaning and avoid saddling purchasers of hydrocarbons with extensive due diligence responsibilities, the notice must be substantial. It need not rise to the level of the notice procedures for operators outlined in § 9:4868, but it must be actual notice delivered by the claimant to the purchaser. The statute itself compels this result: "[t]he privilege is extinguished as to hydrocarbons that are sold . . . if the transferee pays for them before *he* is notified of the privilege *by* the claimant. La. R.S. § 9:4869(A)(1)(a) (emphasis added). General conditions the purchaser may be aware of that provide him with notice do not satisfy the notice requirement. The purchaser must be must be provided with actual notice *by the claimant*. Absent such notice, if the purchaser pays for the hydrocarbons, the safe harbor provision extinguishes the privilege as to those hydrocarbons sold.

*Sufficiency of First Amended Complaint in Intervention*

The M&M Intervenors' amended complaints allege that OHA had constructive knowledge[2] through public filings of the M&M Intervenors' activities on ATP's property giving rise to a privilege under LOWLA prior to the sale of the ORRI to OHA. (*See e.g.*, ECF No. 303 at 6). Additionally, the M&M Intervenors allege that OHA had constructive knowledge that ATP was conducting drilling operations on properties subject to the OHA's ORRI and that vendors (like the M&M Intervenors) were providing goods and services to those properties giving rise to a privilege under LOWLA. (*Id.* at 7-8).

The complaints also allege that OHA had actual knowledge that vendors were providing goods and services to ATP's properties that would give rise to privileges under LOWLA, and further, that OHA had actual knowledge that certain of the vendors were not being paid for the goods and services they provided. (*See e.g.*, at ECF Nos. 298 at 7; 299 at 8; 300 at 10-11).

However, none of the Amended Complaints in Intervention allege that any of the M&M Lienholders *provided* OHA with actual notice of their privilege before OHA paid for the ORRIs. Accordingly, the allegations are not sufficient to give rise to a plausible claim for relief. The Court recommends that OHA's motion to dismiss be granted.

---

[2] The M&M Lienholders misconstrue the Court's May Memorandum Opinion, alleging that it allows either actual or constructive notice. In reality, the Opinion states that the M&M Lienholders argue that OHA had both actual and constructive knowledge. Despite this argument, the Court noted that the Complaints in Intervention alleged no facts that supported either actual or constructive knowledge. The May Opinion did not determine what type of notice would have been adequate since no notice at all was alleged. The M&M Lienholders were given an opportunity to amend, but their amendments do not allege any facts that would support that any notice was *given by the M&M Lienholders* to OHA. As set forth above, the statue requires notice by the M&M Lienholders.

**Conclusion**

The Court will issue an Order consistent with this Report and Recommendation.

SIGNED **August 19, 2016.**

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　Marvin Isgur
　　　　　　　　　　　　　　　UNITED STATES BANKRUPTCY JUDGE