**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF TEXAS (HOUSTON)**

| | | |
|---|---|---|
| OHA INVESTMENT CORPORATION, | * | CASE NO. 4:16-CV-02556 |
| | * | |
| | * | |
| v. | * | JUDGE GRAY H. MILLER |
| | * | |
| BENNU OIL & GAS, LLC | * | |

---

**OHA'S LIMITED OBJECTION TO**
**JUDGE ISGUR'S REPORT AND RECOMMENDATION**

**MAY IT PLEASE THE COURT:**

OHA Investment Corporation f/k/a NGP Capital Resources Company ("OHA") files this Limited Objection (the "Limited Objection") to the Bankruptcy Court's August 19, 2016 Order on OHA's Motion to Dismiss Amended Complaints [Adv. Dkt. No. 325] (the "Final Dismissal Order") and the Related Report and Recommendation [Adv. Dkt. No. 326] (the "Report and Recommendation"), which incorporated the Bankruptcy Court's interlocutory Memorandum Opinion on OHA's Motion to Dismiss [Adv. Dkt. No. 293] (the "Memorandum Opinion"), and would respectfully show the Court as follows:[1]

[1] In support of this Limited Objection, OHA incorporates its (i) Motion to Dismiss the Intervenor Complaints (as amended, Adv. Dkt. No. 284) (the "Motion to Dismiss") (**Exhibit A),** (ii) OHA Investment Corporation's Motion to Dismiss the Amended Complaints in Intervention filed by the Statutory Lien Claimants (Adv. Dkt. No. 310) (Motion to Dismiss Amended Complaints) (**Exhibit B**), and (iii) Reply of OHA in Support of its Motion to Dismiss the Amended Complaints in Intervention filed by the Statutory Lien Claimants (Adv. Dkt. No. 317) (**Exhibit C)** and the arguments and authorities set forth therein. Capitalized terms not herein defined shall have the meanings ascribed to them in the Motion to Dismiss and Motion to Dismiss Amended Complaints. The Intervenors' Complaints that were subject to OHA's Motion to Dismiss Amended Complaints [Adv. Dkt. Nos. 298-300 and 303] are collectively referred to herein as the "Intervenor Complaints." To the extent any Intervenors fail to file objections to the Report and Recommendation pursuant to Federal Rule of Bankruptcy Procedure 9033, they have waived the right to contest or otherwise appeal the Final Dismissal Order. *Nantahall Vill., Inc v. NCNB Nat. Bank of Florida (In re Nantahall Vill., Inc.*) 976 F.2d 876, 880 (4th Cir. 1992) (Chapter 11 debtor waived its right to appeal the district court's order adopting the bankruptcy court's recommendations when it failed to file an objection to the recommendations.)

## I. INTRODUCTION

1. Pursuant to the Motion to Dismiss, OHA sought dismissal of the Intervenor Complaints based on two separate (and alternative) grounds for relief. The Bankruptcy Court sustained only one ground. Accordingly, OHA files this limited objection to preserve both grounds for purposes of this Court's review and any further appeal.

2. OHA purchased a Production Payment (also known as a term overriding royalty) from ATP at a time when labor, goods and/or services were allegedly being provided by certain service companies (the "Lien Claimants" or "Intervenors") to ATP. The Lien Claimants assert that their alleged inchoate liens against ATP attached to (and followed) the Production Payment that was sold to OHA. However, the Louisiana Oil Well Lien Act ("LOWLA" or the "Statute") provides a statutory safe harbor to purchasers of production payments if they are not provided notice of alleged statutory liens prior to the payment of the purchase price. It is undisputed that the Lien Claimants did not notify OHA of the alleged liens prior to OHA's purchase of the Production Payment. What's more, none of the Lien Claimants even registered their liens in the parish records prior to OHA's purchase. As a result, OHA urges this Court to affirm the Bankruptcy Court's dismissal of the Lien Claimants' amended complaints based on the statutory safe harbor.

3. Alternatively, OHA requests that this Court dismiss the Lien Claimants' amended complaints on the basis that LOWLA simply does not permit the attachment of statutory liens to non-lessee interests. LOWLA specifically states that the statutory privileges afforded thereunder do not affect or attach to hydrocarbons owned by a royalty owner or other person who is not a lessee of the operating interest. La. Rev. Stat. § 9:4863(A). Notwithstanding the express statutory language (and OHA's status as a non-lessee), the Bankruptcy Court found that the

Intervenors' alleged statutory liens could attach to hydrocarbons owned by a non-lessee (if the safe harbor were not satisfied). To the extent that this Court does not accept the Bankruptcy Court's recommendation regarding the safe harbor, OHA requests that the Court dismiss the Intervenors' amended complaints on the additional and alternative ground – that the liens could not have attached in the first instance.

## II. BACKGROUND

4. On August 17, 2012 (the "Petition Date"), ATP filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), under Case No. 12-36187.

5. Prior to the Petition Date, pursuant to certain purchase and sale agreements and duly recorded conveyances, OHA purchased a production payment also known as term overriding royalties (the "Production Payment" or the "Term Overriding Royalties")[2] in certain outer continental shelf oil, gas, and mineral leases to submerged lands – known generally as the "Gomez and Telemark Properties" – for $65 million. The original conveyance was recorded on June 23, 2011. [Adv. Dkt. No. 293 at 2]. The first supplement and amendment was recorded on January 6, 2012. [Adv. Dkt. No. 293 at 2]. The second supplement and amendment was recorded on July 23, 2012. [Adv. Dkt. No. 293 at 2]. Pursuant to the Production Payment, OHA is entitled to receive its proportionate share of the proceeds of any and all hydrocarbons produced, saved and sold from the Properties until the "Termination Time" as defined in the Conveyance.

6. On October 17, 2012, OHA commenced adversary proceeding No. 12-03443 by filing its Complaint before the Bankruptcy Court [Adv. Dkt. No. 1] against ATP. On December

[2] The Bankruptcy Court sometimes refers to them as the "ORRIs."

14, 2012, OHA filed its First Amended Complaint [Dkt. No. 69]. As more fully described in the First Amended Complaint, OHA sought a declaratory judgment that the Production Payment is property of OHA and/or are not property of the ATP bankruptcy estate. OHA further sought a declaration that the Conveyance and the instruments giving rise to the Conveyance are not executory contracts that may be rejected.

7. Multiple service companies (the "Intervenors") who were asserting liens against the Gomez and Telemark Properties intervened – claiming that they hold statutory liens or "privileges" under Louisiana law that extend to the Production Payment.

8. On November 29, 2012, the Bankruptcy Court entered an Amended Case Management Order [Adv. Dkt. No. 57] (the "Case Management Order"), bifurcating the issues before the Bankruptcy Court such that the issues of "(i) whether the conveyance(s) and transaction(s) between Plaintiffs and Defendant constituted outright transfers of ownership of the subject interest to Plaintiffs such that the subject interests are not property of the Debtor's estate; and (ii) whether the conveyances of the subject interests are executory contracts or leases which the Debtor may reject under 11 U.S.C. § 365" (defined in the Case Management Order as the "Financing Issues") were to be tried in the first phase. And, any remaining issues (the "Phase II Issues") were to be adjudicated under a separate case management order to be issued after a determination of the Financing Issues. [*See* Adv. Dkt. No. 57 ]

9. After substantial litigation, on February 4, 2016, the Court fully and finally resolved the Financing Issues by entry of an Agreed Final Judgment [Adv. Dkt. No. 276]. The Agreed Final Judgment determined the nature of the interest that OHA purchased from ATP and is binding on the Intervenors. [Adv. Dkt. No. 276 at 6]. Under the Final Agreed Judgment, it was determined that OHA purchased a term overriding royalty interest also known as a

production payment, which is by definition – and under the terms of the Final Agreed Judgment – an interest in liquid or gaseous hydrocarbons. [Dkt. No. 276 at 5]; 11 U.S.C. § 101(56A).

10. Thereafter, pursuant to a briefing schedule set by the Bankruptcy Court [Adv. Dkt. No. 277], OHA filed its Motion to Dismiss [Adv. Dkt. No. 284]. It also filed its *Motion to Withdraw the Reference with Respect to the "Phase II" Claims* [Adv. Dkt. No. 278] (the "Motion to Withdraw Reference"). On March 24, 2016, the Bankruptcy Court held combined oral hearings on the Motion to Dismiss and Motion to Withdraw Reference.

11. On May 13, 2016, the Bankruptcy Court entered its Order [Adv. Dkt. No. 294] on OHA's Motion to Dismiss and Motion to Withdraw Reference and its related Report and Recommendation and Memorandum Opinion [Adv. Dkt. No. 293].[3] Pursuant to the Memorandum Opinion, the Court determined that under La. R.S. § 9:4869 OHA was a purchaser of an interest in hydrocarbons and if it "purchased an interest in hydrocarbons (or proceeds therefrom) without notice of the M&M Intervenors' privileges in a bona fide transaction, it would take the ORRIs free and clear of the M&M Intervenor's rights." [Adv. Dkt. No. 293 at 13]. Accordingly, the Intervenors were ordered to file amended complaints to specifically plead whether OHA had notice of their alleged privileges at the time it paid the purchase price. [Adv.

[3] The Intervenors raised certain procedural questions regarding whether this first Order was interlocutory, which have been resolved. The Order stated that "[t]he Court recommends that the District Court withdraw the reference when the Adversary Proceeding is ready for trial." The Order did not indicate that it was making a recommendation to the District Court regarding the Motion to Dismiss. [Adv. Dkt No. 294]. Also, the memorandum opinion specifically stated "[a]s the Court is not dismissing all claims presented in this lawsuit, the order accompanying this opinion is interlocutory." [Adv. Dkt. No. 293 at 8]. Notwithstanding, the Intervenors elected to file their Limited Joint Objection [Dist. Dkt. No. 5] (the "Joint Objection"), which objected to Judge Isgur's interlocutory conclusions on the Motion to Dismiss. Also on May 27, 2016, the Intervenors filed an appeal of the Order [Adv. Dkt. No. 301]. On June 6, 2016, in order to confirm its understanding, OHA filed its Emergency Motion for Order Clarifying that Report and Recommendation is Inapplicable to the Interlocutory Order on OHA's Motion to Dismiss, or Alternatively, for Leave to File Objection to Report and Recommendation and Memorandum Opinion [Adv. Dkt. No. 306]. The Bankruptcy Court issued three orders clarifying that the Order denying OHA's Motion to dismiss and granting Statutory Lien claimants leave to amend was interlocutory. [Adv. Dkt. No. 307-309.] Following this clarification, the Intervenors moved to withdraw their appeal and the appeal was dismissed. [Civil Action No. 4:16-CV-1514 Dkt. Nos. 3-4]

Dkt. No. 293 at 14-15], [Adv. Dkt. No. 294]. The Intervenors filed their Amended Complaints on May 27, 2016, but were unable to point to any instance where they had provided notice to OHA of their liens prior to OHA's purchase as required by LOWLA.

12. On August 19, 2016 the Bankruptcy Court entered its Final Dismissal Order and the Report and Recommendation holding that the safe harbor provision of Section 9.4869(1)(a) applied to the transaction between OHA and ATP, and because OHA was not notified of the privileges by the Statutory Lien Claimants before it purchased the Production Payment, the liens (to the extent they attached) were extinguished by the sale.[4] The Bankruptcy Court analyzed the Statute, its predecessor statute, and Louisiana caselaw regarding notice. The Bankruptcy Court found that general conditions the purchaser may be aware of such as drilling operations do <u>not</u> satisfy the notice requirement because the Statute requires actual notice delivered by the claimant to the purchaser. "The statute itself compels this result: [t]he privilege is extinguished as to hydrocarbons that are sold…if the transferee pays for them before *he* is notified *by* the claimant. La. R.S. § 9.4869(A)(1)(a)."[5] Absent such notice, if the purchaser pays for the hydrocarbons, the safe harbor provision extinguishes the privilege as to those hydrocarbons sold.[6] The Bankruptcy Court found that none of the Lien Claimants provided OHA with actual notice of their privilege before OHA paid for the Production Payment. Accordingly, the Bankruptcy Court recommended that OHA's motion to dismiss be granted.[7]

## <u>III. LIMITED OBJECTION</u>

13. OHA does not object to the Bankruptcy Court's findings except with respect to the limited objection set forth herein.

---

[4] Report and Recommendation at 5-11.
[5] Report and Recommendation at 10 (emphasis by Bankruptcy Court).
[6] Report and Recommendation at 10.
[7] Report and Recommendation at 12.

14. Out of an abundance of caution, and only to the extent this Court does not accept the Bankruptcy Court's recommendation under the safe harbor, OHA objects to the Report and Recommendation to the limited extent that it improperly concludes that Statutory Privileges, under LOWLA, can attach to non-lessee interests including term overriding royalty interests. To the extent this Court determines that the safe harbor was not satisfied, OHA submits that the Bankruptcy Court's decision that Statutory Privileges can attach to term overriding royalty interests was in error.

**A. Under LOWLA, Statutory Privileges Do Not Attach to Overriding Royalty Interests, Production Owned by Overriding Royalty Holders, or Obligations Owed to Overriding Royalty Holders.**

15. "[W]here the statute's language is plain "the sole function of the court is to enforce it according to its terms." *United States v. Ron Pair Enters*., 489 U.S. 235, 241 (1989). Section 4863 of LOWLA details specific types of oil and gas interests and property to which privileges may attach. A privilege cannot attach to hydrocarbons owned by or amounts due to *a person who is not a lessee of the operating interest*. La. R.S. § 9:4863(C)(1).

16. Under LOWLA, privileges attach to operating interests (cost-bearing interests) under which operations are conducted, the interests of the lessee, if any, in hydrocarbons produced from the operating interest, proceeds received by the lessee from the disposition of hydrocarbons subject to the privilege, and movables/equipment on the well site that are owned by the lessees. *See* La. R.S. § 9:4863(A). The express language of the statute implicates cost-bearing or "operating interests" and specifically excludes hydrocarbons attributable to royalty owners or other persons who are not lessees of the operating interest. *See* La. R.S. § 9:4863(A),

(C). The statute specifically provides:

§ 4863. Property subject to the privilege:

> **A.** ***Except as limited by Subsections B, C, and D of this Section*, the privilege given by R.S. 9:4863 is established over:**
>
> (1) The operating interest under which the operations giving rise to the claimant's privilege are conducted. . .
> (2) Drilling or other rig located at the well site of the operating interest if the rig is owned by the operator or by a contractor from whom the activities giving rise to the privilege emanate.
> (3) The interest of the operator and participating lessee in hydrocarbons produced from the operating interest and the interest of a non-participating lessee in hydrocarbons produced from that part of his operating interest subject to the privilege.
> (4) The proceeds received by, and the obligations owed to, a lessee from the disposition of hydrocarbons subject to the privilege.

La. R.S. § 9:4863(A) (emphasis added).

17. Subsection C states that:

> C. The privilege does ***not* affect:**
>
> (1) ***That part*** of ***hydrocarbons produced from an operating interest that is owned by a*** lessor, sublessor**,** ***overriding royalty owner, or other person who is not a lessee of the operating interest.***
> (2) The obligations or proceeds arising from the disposition of such hydrocarbons that are owned by or payable to such persons.

La. R.S. § 9:4863(C) (emphasis added).

18. Although ATP was a lessee and sold the Term Overriding Royalties to OHA, there is no allegation in any of the Intervenor Complaints that OHA has ever been a lessee or holder of an operating interest.

19. Although the Bankruptcy Court recognized that under the plain language of the statute, statutory privileges do not attach to an ORRI,[8] the Bankruptcy Court incorrectly held that

[8] *See* Memorandum Opinion at p. 9.

(under certain circumstances) statutory privileges can attach to an ORRI if the privilege validly attached to an operating interest prior to the assignment of a royalty.

**B. Under LOWLA, Attachment Depends on Whether the Interest Owner is a Lessee - Not On the Timing of Particular Non-Cost-Bearing Conveyances.**

20. Under the Statute, the term "operating interest" is defined as "a mineral lease or sublease of a mineral lease, or an interest in a lease or sublease ***that gives the lessee,*** either singly or in association with others***, the right to conduct the operations giving rise to the claimant's privilege***." La. R.S. § 9:4861(5)(a) (emphasis added). The plain language dictates that a privilege may attach to interests that give the lessee the right to conduct the operations and the interest of the lessee in hydrocarbons "produced from the operating interest." *See id*. It expressly excludes hydrocarbons "produced from the operating interest" attributable to royalty owners or others who are ***not lessees of the operating interest***. La. R.S. § 9:4863(C).

21. It is significant that the statute describes hydrocarbons owned by cost-bearing and non-cost-bearing interest owners as being "produced from the operating interest" – while specifying that only the "operating interest" (and the lessee's interest in hydrocarbons ***produced*** from the operating interest) is subject to privileges. La.R.S. 9:4863(A)(1), (C). The statute's focus on the "operating interest" – and "the interest of the operator and participating lessee" in hydrocarbons produced from that interest – indicates that LOWLA is prospective as it relates to interest owners, because it is common knowledge that interests in hydrocarbons (***to be produced***) can be conveyed from the lessee's "net revenue interest" during operations and production, without reducing the lessee's operating interest. As a result, the statute contemplates that a net revenue interest (without a right to conduct operations) may be assigned without being affected by existing privileges.

22. A royalty is an interest in oil and gas produced at the surface, free of the expense of production.[9] It is by nature an interest that does not share in the costs of development, operations, and production.[10] It is common for lessees to sell cost-free interests in hydrocarbons (and particularly production payments) as a mechanism to finance the development of the underlying lease (i.e. to pay drilling costs). 2 P. MARTIN & B. KRAMER, WILLIAMS & MEYERS OIL AND GAS LAW § 422 at 370 (2012) (noting "the owner of a working interest may use oil payments [a/k/a production payments] to finance his operations, by assignment of the oil payment to a supply company, a drilling contractor, or to raise money for drilling."). This practice has been ongoing in the industry many years. *See, e.g. Pansy Oil Co. v. Federal Oil Co*., 91 S.W.2d 453 (Tex. Civ. App. 1936, error ref'd) (discussing sale of production payment to finance drilling activities). And in such instances, the operating interest owner may sell interests in hydrocarbons to be produced, but maintain 100% of the operating interest (which gives rise to the right to conduct operations) notwithstanding the assignment of non-cost bearing interests, which do ***not reduce the operating interest/working interest***. *See J.B. Hanks Co., Inc.*, No. 97-CV-0040, 2013 U.S. Dist. LEXIS 184130 at *10-11 n. 22 (emphasis added). The operating interest remains the same before and after the conveyance of a non-cost-bearing interest. However, the holder's right to receive future hydrocarbons would be reduced by the sale, and the assigning operator would receive - through the sale - the value on account of the hydrocarbons sold.

23. The type and nature of interest held is the critical inquiry to determine whether a privilege attaches under LOWLA. The fact that the Statute focuses on "operating interests" – rather than the entirety of the mineral interests (and net revenue interest) owned by the lessee as

---

[9] 2 P. MARTIN & B. KRAMER, WILLIAMS & MEYERS OIL AND GAS LAW § 418.1 at 352.
[10] *Id; see also*, 2 P. MARTIN & B. KRAMER, WILLIAMS & MEYERS OIL AND GAS LAW § 424 at 366.10-366.11.



507055 000037 18377219.4

of the date of the privilege's inception – evidences an intent to permit the holder of an operating interest to convey cost-free interests (i.e. royalties that may reduce future net revenue) in the face of continuing lease operations. Notably, per the Statute, the operating interest of the lessee would remain subject to the privileges.

24. In finding that privileges can attach to non-lessee interests, the Bankruptcy Court implicitly contradicted its express finding that hydrocarbons in place are not capable of ownership in place. The Bankruptcy Court stated "it is well settled jurisprudence of Louisiana that oil and gas in place are not subject to absolute ownership as specific things apart from the soil of which they form part; and a grant or reservation of such oil and gas carries only the right to extract such mineral from the soil."[11] It is this "right to extract" referenced by the Bankruptcy Court – or the operating interest – to which privileges may attach. They expressly do not attach to non-lessee / non-operating interests, and they cannot attach to hydrocarbons in place – because hydrocarbons in place are not owned by the holder of the operating interest. And, it is undisputed that no right to extract was ever assigned to OHA. As a result, no privileges could have attached to the interest in hydrocarbons that was assigned to OHA from ATP, because such hydrocarbons were not owned by the holder of the operating interest at the time of production. That is, the interest in hydrocarbons could not be an "***an*** interest ***of the operator*** . . . in ***<u>hydrocarbons produced</u> from the operating interest***. . .". La. R.S. § 9:4863(A)(3).

25. The Bankruptcy Court also incorrectly concluded that if it "adopts OHA's interpretation, the lessee could effectively extinguish any statutory privilege provided by LOWLA through a simple conveyance."[12] This logic is flawed because under the Statute and Louisiana law, privileges cannot attach to interests other than the operating interest (the right to

[11] Memorandum Opinion at 11.
[12] Memorandum Opinion at 12.

extract) and hydrocarbons ***produced from*** the operating interest; privileges do not attach to hydrocarbons in place and do not attach to non-lessee interests. Therefore, the conveyance of a cost-free interest does not extinguish any privilege – because no privilege existed in the first instance. Further, to the extent a property interest is conveyed by an operator for less than reasonably equivalent value or with intent to defraud creditors, the lien claimants would have a remedy to avoid the transfer under the Uniform Fraudulent Transfer Act or other applicable law.

### C. If the Statute Were Intended to Attach to Cost-Free Interests Conveyed Post-Inception, Interests Held by Non-Lessees would Not Be Expressly Carved Out Under the Statute.

26. If the intent of the Statute were for privileges to attach to cost-free interests conveyed after inception, then there would be no need to expressly carve out hydrocarbons produced "from the operating interest" attributable to royalty owners or others who are not lessees of the "operating interest." *See* La. R.S. § 9:4863(C). Moreover, there would be no need to expressly limit attachment of the privilege to the "operating interest." The Statute would simply provide for the attachment to all of the lessee's rights granted under the lease as of the time the privilege is established. There would be no need to carve out non-lessee interests because such interests would not be subject to a privilege unless the lessee assigned a cost-free interest after the inception of the privilege.

27. Because non-lessee interests are expressly carved out and only the "operating interest" is subject to the privilege, privileges cannot attach to subsequently conveyed royalties. Lien statutes are to be strictly construed against the party claiming the lien, especially as it relates to determining whether a claimant is entitled to a lien. *See Phillips Petroleum Co. v. Best Oilfield Services, Inc.*, 48 F.3d 913, 916 (5th Cir. 1995) (noting Louisiana courts construe privileges strictly when in doubt); *Amoco Production Co. v. Horwell Energy Inc.*, 969 F.2d 146,

148 (5th Cir. 1992) (stating privileges are construed strictly; when in doubt, no privilege is found); *Baker Chemicals, Inc., v. Arkla Exploration Co*., 545 So. 2d. 709, 711 (La. App. 1989); *Louisiana Materials Co., Inc., v. Atlantic Richfield Co*., 493 So.2d 1141, 1145 (La. 1986).

28. The Statute simply does not allow privileges to attach to non-lessee interests. Rather, the statute provides that privileges, if any, would attach to the proceeds received by or amounts owed to the lessee on account of the sale of the non-cost-bearing interest. *See* La. R.S. § 9:4863(A)(4). The Statute provides that the property subject to a privilege includes "proceeds received by, and the obligations owed to, a lessee from the disposition of hydrocarbons subject to the privilege." La. R.S. § 9:4863(A)(4). It is undisputed that ATP sold the Term Overriding Royalty and the related hydrocarbons to OHA for $65 million. Accordingly, the Intervenors' privileges (if any) would have attached to the amounts paid by OHA for the purchase of the hydrocarbons, not to the Term Overriding Royalties. It would be absurd for LOWLA to impose liability on OHA or its property for operating costs attributable to ATP's operating interest, when OHA never acquired an operating interest and instead paid substantial value to ATP in a bona fide transaction for a non-cost-bearing royalty interest.

29. On this issue, the Intervenors have essentially caused the Bankruptcy Court to re-write the Statute to state that "[t]he privilege does not affect (1) That part of hydrocarbons produced from an operating interest that is owned by a lessor, sub lessor, overriding royalty owner, or other person who is not a lessee of the operating interest [***unless the interest of the non-lessee was part of the net revenue interest that accrued to the operating interest at the time the privilege was established***]." *Cf*., La. R.S. § 9:4863(C)(1). Obviously, this is not what the Statute says, and it should not be re-written for the benefit of the Intervenors. *United States v. Temple*, 105 U.S. 97 (1882) ("When the language is plain, a court has no right to insert words

and phrases, so as to incorporate in the statute a new and distinct provision."). Whether a statutory lien attaches to particular property is entirely dependent upon the applicable statutory language, which varies materially under the lien statutes of different states. Under Texas law, for example, statutory mineral liens do not attach, in any respect, to hydrocarbons as they are produced. *See* Tex. Prop. Code § 56.003.

30. Based on the plain language of the Statute and the interpretive standards applicable in this case (*stricti juris*), a privilege cannot attach to the Term Overriding Royalties. *See Amoco Production Co. v. Horwell Energy Inc.*, 969 F.2d 146, 148 (5th Cir. 1992) (stating privileges are construed strictly; when in doubt, no privilege is found).

## IV. CONCLUSION AND PRAYER

OHA asks this Court to affirm the Bankruptcy Court's conclusion that the Intervenors' privileges (to the extent they attached), were extinguished by the statutory safe harbor. However, OHA objects to the extent the Bankruptcy Court incorrectly concluded that the Intervenors' statutory privileges could attach to the Term Overriding Royalties in the first place. For the foregoing reasons, the Court should dismiss the Intervenor Complaints with prejudice on two grounds: (i) that the alleged privileges cannot attach to the Term Overriding Royalties and (ii) even if they could attach, the privileges were extinguished by the statutory safe harbor.

Dated: September 1, 2016.

Respectfully submitted,

**THOMPSON & KNIGHT LLP**

By: *__/s/ Tye C. Hancock__________________*

Tye C. Hancock
Bar No. 24032271
Mitchell E. Ayer
Bar No. 01465500
333 Clay Street, Suite 3300
Houston, Texas 77002
Telephone: (713) 654-8111
Facsimile: (713) 654-1871

David M. Bennett
Bar No. 2139600
Katharine Battaia Clark
Bar No. 24046712
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: (214) 969-1700
Facsimile: (214) 969-1751

**ATTORNEYS FOR OHA INVESTMENT CORPORATION**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on those parties entitled to notice via this Court's ECF system and upon the parties on the attached service list by regular US mail on this 1st day of September, 2016.

/s/ *Tye C. Hancock*
Counsel

**SERVICE LIST**

Bennu Oil & Gas, LLC
1330 Post Oak Blvd. Ste. 1600
Houston, TX 77056-3072

**DEFENDANT**

Andrew J. Gallo
MORGAN, LEWIS & BOCKIUS LLP
One Federal St
Boston, MA 02110
andrew.gallo@morganlewis.com

Sean B. Davis
WINSTEAD PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, TX 77002
sbdavis@winstead.com

Phillip L Lamberson
WINSTEAD PC
500 Winstead Building
2728 N. Harwood Street
Dallas, TX 75201
plamberson@winstead.com

**ATTORNEYS FOR BENNU OIL & GAS, LLC**

Rodney D. Tow
TOW AND KOENIG PLLC
26219 Oak Ridge Drive
The Woodlands, TX 77380
rtow@towkoenig.com

**TRUSTEE**

Charles M. Rubio
DIAMOND MCCARTHY, LLP
909 Fannin Street, Suite 1500
Houston, TX 77010
crubio@diamondmccarthy.com

**COUNSEL FOR TRUSTEE IN MAIN BANKRUPTCY**

Chris Lindstrom
COOPER & SCULLY, P.C.
815 Walker Street, Suite 1040
Houston, Texas 77002
Chris.Lindstrom@cooperscully.com

Timothy Micah Dortch
COOPER & SCULLY, P.C.
900 Jackson Street, Suite 100
Dallas, TX 75202
Micah.Dortch@cooperscully.com

**ATTORNEY IN CHARGE FOR RODNEY TOW, TRUSTEE**

Robin B. Cheatham
ADAMS AND REESE LLP
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139-4500
robin.cheatham@arlaw.com

**ATTORNEYS FOR HARVEY GULF INTERNATIONAL MARINE, LLC, HORNBECK OFFSHORE SERVICES, L.L.C., EXPEDITORS & PRODUCTION SERVICES, INC., EPS CARGO HANDLERS COMPANY, AND EPS LOGISTICS COMPANY**

Paul M Davis
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, TX 77002
pauldavis@andrewskurth.com

John J. Sparacino
VORYS, SATER, SEYMOUR & PEASE LLP
700 Louisiana Street, Suite 4100
Houston, Texas 77002
jjsparacino@vorys.com

**ATTORNEYS FOR THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.**

Brian D. Wallace
Allen C. Miller
Evan Dicharry
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
brian.wallace@phelps.com
allen.miller@phelps.com
evan.dicharry@phelps.com

**ATTORNEYS FOR CREDITORS, GULF OFFSHORE LOGISTICS, L.L.C., MARTIN HOLDINGS, L.L.C., C-PORT/STONE L.L.C., OFFSHORE SERVICE VESSELS, L.L.C. AND BARRY GRAHAM OIL SERVICE, L.L.C.**

Phil F. Snow
Kenneth Green
Ross Spence
SNOW FOGEL SPENCE LLP
2929 Allen Parkway, Suite 4100
Houston, TX 77019
philsnow@snowfogel.com
kennethgreen@snowfogel.com
rossspence@snowfogel.com

**ATTORNEYS FOR SCHLUMBERGER TECHNOLOGY CORPORATION, M-I L.L.C. D/B/A M-I SWACO, SMITH INTERNATIONAL, INC., WIRELINE CONTROL SERVICES, LLC, NABORS OFFSHORE CORPORATION, CANRIG DRILLING TECHNOLOGY, LTD., AND SUPREME SERVICE & SPECIALTY CO. INC.**

Michael D. Rubenstein
LISKOW & LEWIS
1001 Fannin Street, Ste. 1800
Houston, Texas 77002
mdrubenstein@liskow.com

**ATTORNEYS FOR CHAMPION TECHNOLOGIES, INC. AND OFFSHORE ENERGY SERVICES INC.**

Stewart F. Peck
Christopher T. Caplinger
Benjamin W. Kadden
LUGENBUHL, WHEATON, PECK, RANKIN 601
Poydras Street, Suite 2775
New Orleans, LA 70130
speck@lawla.com
ccaplinger@lawla.com
bkadden@lawla.com

**ATTORNEYS FOR WARRIOR ENERGY SERVICES CORPORATION, FASTORQ, L.L.C., STABIL DRILL SPECIALTIES, L.L.C., WORKSTRINGS INTERNATIONAL, L.L.C., AND SUPERIOR ENERGY SERVICES, L.L.C.**

J. Christopher Kohn
Kathie Shahan
Victor W. Zhao
Commercial Litigation Branch
United States Department of Justice
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044
victor.w.zhao@usdoj.gov

**COUNSEL FOR THE US**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re:<br><br>ATP OIL & GAS CORPORATION,<br><br>Debtor | §<br>§<br>§<br>§<br>§<br>§ | Case No. 12-36187<br><br><br><br>Chapter 7 |
| OHA INVESTMENT CORPORATION,<br><br>Plaintiff,<br>v.<br><br>ATP OIL & GAS CORPORATION,<br>And BENNU OIL & GAS, LLC<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br>ADVERSARY NO. 12-03443 |

**OHA INVESTMENT CORPORATION'S SECOND AMENDED MOTION TO DISMISS THE COMPLAINTS IN INTERVENTION FILED BY THE STATUTORY LIEN CLAIMANTS**

[Relates to Docket Numbers 62-67, 282]

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.



EXHIBIT
A

Comes Now OHA Investment Corporation f/k/a NGP Capital Resources Company ("<u>OHA</u>") and files this second amended motion to dismiss (the "<u>Motion</u>") the complaints in intervention [Dkt. Nos. 62-67, 282] (collectively, the "<u>Intervenor Complaints</u>") filed in this proceeding by certain alleged lien claimants (the "<u>Intervenors</u>" or "<u>Statutory Lien Claimants</u>"), and would respectfully show the Court as follows:

## I. RELIEF REQUESTED AND SUMMARY OF MOTION

1. OHA requests that the Court dismiss the Intervenor Complaints for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012. The Intervenors cannot re-write the Louisiana Oil Well Lien Act. The Act details specific types of oil and gas interests and property to which privileges may attach. A privilege cannot attach to hydrocarbons owned by or amounts due to *a person who is not a lessee of the operating interest*. OHA is not and never has been a lessee of the operating interest. The plain language of the statute provides that a privilege may attach to the working interest of the lessee and to hydrocarbons *produced* from that interest, but it does not provide for attachment to the entirety of the lessee's interest, including the <u>lessee's net revenue interest or hydrocarbons to be produced</u>. As a result, the statute clearly contemplates the fact that a lessee may convey net revenue interests in hydrocarbons to be produced, without being affected by existing privileges. The distinction between a lessee's operating interest and net revenue interest is well documented under Louisiana law, and the statutory language is clear that hydrocarbons attributable to royalty owners cannot be affected by privileges.

2. To the extent the Court does not dismiss the Intervenors' claims on the basis that their privileges cannot attach to non-lessee interests, the claims must be dismissed because the

Term Overriding Royalty was purchased in a bona fide transaction and is protected under section 9:4869 of the statute.

3. Because it is clear that the Intervenors cannot prove any set of facts in support of their claims, their complaints must be dismissed.

## II. BACKGROUND

4. On August 17, 2012 (the "Petition Date"), ATP filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code. On that same date, the Debtor filed a motion seeking authorization to pay post-petition funds attributable to overriding royalty interests [Bankr. Dkt. No. 15] (the "Payment Motion").

5. Prior to the Petition Date, pursuant to certain PSAs and a duly recorded Conveyance dated June 1, 2011 (and two Supplements and Amendments to the Conveyance, herein in the aggregate the "Conveyance"), OHA purchased certain term overriding royalties (the "Term Overriding Royalties") in certain outer continental shelf oil, gas, and mineral leases to submerged lands – known generally as the "Gomez and Telemark Properties" – for $65 million. Under the Conveyance, OHA is entitled to receive its proportionate share of the proceeds of any and all hydrocarbons produced, saved and sold from the Properties for each production month until such time as the sum of the royalty proceeds actually received by OHA under the Conveyance equals the "Total Sum" as defined in section 3.3 of the Conveyance.

6. On August 23, 2012, the Court entered an order authorizing the payment by the Debtor of funds attributable to certain overriding royalty interests and net profits interests [Bankr. Dkt. No. 191] (the "Payment Order").

7. On October 17, 2012, OHA filed its Complaint [Dkt. No. 1] (the "Complaint") in this proceeding against ATP. On December 14, 2012, OHA filed its First Amended Complaint

[Dkt. No. 69] (the "Amended Complaint"). As more fully described in the Amended Complaint, OHA sought a declaratory judgment that the Term Overriding Royalties are property of OHA and/or are not property of the ATP bankruptcy estate. OHA further sought a declaration that the Conveyance and the instruments giving rise to the Conveyance are not executory contracts that may be rejected.

8. On October 24, 2012, this Court entered a Case Management Order [Dkt. No. 6], setting the deadline for the filing of motions to intervene and the Debtor's answer as October 31, 2012.

9. On or before October 31, several parties asserting a lien against certain of the Debtor's property filed motions to intervene,[1] and the motions were granted as set forth in this Court's November 27, 2012 Order [Dkt. No. 50] (the "Intervention Order").

10. On November 29, 2012, the Court entered an Amended Case Management Order, bifurcating the issues before the Court such that the issues of "(i) whether the conveyance(s) and transaction(s) between Plaintiffs and Defendant constituted outright transfers of ownership of the subject interest to Plaintiffs such that the subject interests are not property of the Debtor's estate; and (ii) whether the conveyances of the subject interests are executory contracts or leases which the Debtor may reject under 11 U.S.C. § 365" (defined in the Order as the "Financing Issues") will be tried in the first phase. And, any remaining issues (the "Phase II Issues") will be adjudicated under a separate case management order to be issued after a determination of the Financing Issues. The Order further required that, until a determination of the Financing Issues, "further pleadings in this proceeding shall relate to the determination of the Financing Issues." [*See* Dkt. No. 57 at para. 1]. Significantly, the Court directed that Intervenors "must file Rule

[1] *See* Dkt. Nos. 7, 10, 14-15, 17, 20-21 & 29 (asserting liens on the Properties based on goods and/or services delivered).

24(c) pleadings setting forth their claims and defenses by Dec. 13, 2012, *relating to the Financing Issues*." [*See id*. at para. 4 (emphasis added)].

11. On December 13, 2012, the Intervenor Complaints were filed as follows:

- Dkt. No. 62 - Frank's Casing Crew and Rental Tools, Inc.
- Dkt. No. 63 - Warrior Energy Services Corporation, Fastorq, L.L.C., Stabil Drill Specialties, L.L.C., Workstrings International, L.L.C., and Superior Energy Services, L.L.C., d/b/a Superior Completion Services
- Dkt. No. 64 - Harvey Gulf International Marine, LLC, Hornbeck Offshore Services, LLC, Expeditors and Production Services, Inc., and EPS Cargo Handlers Company, Inc.
    - Dkt. No. 131 – First Amended Complaint by Harvey Gulf International Marine, LLC, Hornbeck Offshore Services, LLC, Expeditors and Production Services, Inc., and EPS Cargo Handlers Company, Inc.
    - Dkt. No. 282 – Second Amended Complaint in Intervention by Harvey Gulf International Marine, LLC, Hornbeck Offshore Services, LLC, Expeditors and Production Services, Inc., and EPS Cargo Handlers Company, Inc.
- Dkt. No. 65 - Schlumberger Technology Corporation, M-I L.L.C. d/b/a M-I SWACO, Smith International, Inc., Wireline Control Services, LLC, Nabors Offshore Corporation, Canrig Drilling Technology, Ltd., and Supreme Service & Specialty Co. Inc. (the "Schlumberger Complaint")
- Dkt. No. 66 - Champion Technologies, Inc. and Offshore Energy Services, Inc.
- Dkt. No. 67 - Gulf Offshore Logistics, L.L.C., Martin Holdings, L.L.C., C-Port/Stone, L.L.C., and Offshore Service Vessels, L.L.C.

12. The Schlumberger Complaint is the only Intervenor Complaint that nominally sought relief with respect to the Financing Issues (*see* Dkt. No. 65 at para. 21). On December 19, 2012, *OHA filed its Motion to Strike, Dismiss, or Alternatively, Abate Complaints in Intervention filed by Certain Alleged Lien Claimants in Violation of Amended Case Management*

*Order* [Dkt. No. 70] (the "Motion to Dismiss"). The Court did not set a hearing on the Motion to Dismiss. Accordingly, pursuant to the Amended Case Management Order, Phase II of the litigation was - in effect - abated pending a resolution of Phase I.

13. The Intervenor Complaints assert claims against OHA, generally seeking declaratory relief: (1) that they hold statutory privileges under the Louisiana Oil Well Lien Act ("LOWLA") against ATP's operating or leasehold interest in the Gomez and/or Telemark Properties; (2) that the Term Overriding Royalties were transferred to OHA subject to their privileges; and (3) that payments made to OHA must be disgorged until their privileges are satisfied. All of the Intervenor Complaints are premised on the theory that privileges arising under LOWLA attach to overriding royalty interests.

14. On or about October 17, 2013, Bennu purchased certain assets from ATP including all claims against OHA for recharacterization of the Term ORRI and under 11 U.S.C. § 549.[2] On June 26, 2014, ATP's Bankruptcy Case was converted to a case under Chapter 7,[3] and Rodney D. Tow was appointed as Chapter 7 Trustee (in such capacity, the "Trustee").[4]

15. Effective April 22, 2015, Bennu and OHA entered into a Settlement and Release Agreement (the "Settlement Agreement") to fully resolve the Financing Issues. And, on April 30, 2015, Bennu and OHA filed their Expedited Joint Motion to Enter Agreed Judgment [OHA Adv. Dkt. No. 238] (the "Motion for Agreed Judgment"). Based on an objection filed by the Trustee, the Motion for Agreed Judgment was abated for future consideration.

16. On October 16, 2015, the Trustee, OHA and Bennu jointly filed a *Stipulation of Settlement and Release* [OHA Adv. Dkt. No. 271] (the "Stipulation") to resolve the Financing

[2] Bankr. Dkt. No. 2706 (sale order); Adv. Dkt. No. 236 (order on ownership motion); Adv. Dkt. No. 296, Memorandum Opinion, Case No. 12-03425.

[3] Bankr. Dkt. No. 3163.

[4] Bankr. Dkt. No. 3165.

Issues, as well as, other claims. In connection therewith, the Trustee filed a *Motion to Compromise Controversy Under Bankruptcy Rule 9019* [Bankr. Dkt. No. 3628] (the "Motion to Compromise"), seeking an order approving the Stipulation.[5]

17. On December 14, 2015, the Court entered its order approving the Stipulation. And, on February 4, 2016, the Court granted the Motion for Agreed Judgment, which fully and finally resolved the Financing Issues. Accordingly, OHA submits this Amended Motion to Dismiss the Intervenor Complaints.

## III. ARGUMENT

### (i) Standard of Review

18. A complaint should be dismissed if it "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering such a motion, although the Court accepts all of the factual allegations in the complaint as true, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 106 S. Ct. 2932 (1986). Dismissal is appropriate where "it is clear the plaintiff can prove no set of facts in support of the claims in the complaint." *Powell v. U.S.*, 945 F.2d 374, 375 (11th Cir. 1991). Therefore, a court should dismiss a complaint "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall County Bd. Of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

19. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusion, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65,

[5] Attached to the Motion to Compromise as Exhibit 1 is a copy of the Stipulation.

167 L. Ed. 2d 929 (2007), *quoting Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986). Further, the plaintiff's factual allegations, when assumed to be true, "must be enough to raise a right to relief above the speculative level. . . ." *Id*. at 555, 127 S. Ct. at 1965.

**A. Under LOWLA, Statutory Privileges Do Not Attach to Overriding Royalty Interests, Production Owned by Overriding Royalty Holders, or Obligations Owed to Overriding Royalty Holders.**

20. "[W]here the statute's language is plain "the sole function of the court is to enforce it according to its terms." *United States v. Ron Pair Enters*., 489 U.S. 235, 241 (1989). Section 4863 of LOWLA details specific types of oil and gas interests and property to which privileges may attach. A privilege cannot attach to hydrocarbons owned by or amounts due to *a person who is not a lessee of the operating interest*. La. R.S. § 9:4863(C)(1). Taking all factual allegations in the Intervenor Complaints as true, the Complaints must be dismissed because there is no right to relief under LOWLA against OHA as the holder of a term overriding royalty interest.

21. Under LOWLA, privileges attach to operating interests (cost-bearing interests) under which operations are conducted, the interests of the lessee, if any, in hydrocarbons produced from the operating interest, proceeds received by the lessee from the disposition of hydrocarbons subject to the privilege, and movables/equipment on the well site that are owned by the lessees. *See* La. R.S. § 9:4863(A). The express language of the statute implicates cost-bearing or "operating interests" and specifically excludes hydrocarbons attributable to royalty owners or other persons who are not lessees of the operating interest. *See* La. R.S. § 9:4863(A), (C). The statute specifically provides:

§ 4863. Property subject to the privilege:

**A.** ***Except as limited by Subsections B, C, and D of this Section***, **the privilege given by R.S. 9:4863 is established over:**



507055 000037 16781612.2

(1) The operating interest under which the operations giving rise to the claimant's privilege are conducted. . .
(2) Drilling or other rig located at the well site of the operating interest if the rig is owned by the operator or by a contractor from whom the activities giving rise to the privilege emanate.
(3) The interest of the operator and participating lessee in hydrocarbons produced from the operating interest and the interest of a non-participating lessee in hydrocarbons produced from that part of his operating interest subject to the privilege.
(4) The proceeds received by, and the obligations owed to, a lessee from the disposition of hydrocarbons subject to the privilege.

La. R.S. § 9:4863(A) (emphasis added).

22. Subsection C states that:

C. The privilege does ***not affect***:

(1)***That part*** of ***hydrocarbons produced from an operating interest that is owned by a*** lessor, sublessor***, overriding royalty owner, or other person who is not a lessee of the operating interest.***
(2) The obligations or proceeds arising from the disposition of such hydrocarbons that are owned by or payable to such persons.

La. R.S. § 9:4863(C) (emphasis added).

23. Although ATP was a lessee and sold an overriding royalty to OHA, there is no allegation in any of the Intervenor Complaints that OHA has ever been a lessee or holder of an operating interest.

**(ii) Under LOWLA, Attachment Depends on Whether the Interest Owner is a Lessee - Not On the Timing of Particular Non-Cost-Bearing Conveyances**

24. Under the Statute, the term "operating interest" is defined as "a mineral lease or sublease of a mineral lease, or an interest in a lease or sublease ***that gives the lessee,*** either singly or in association with others***, the right to conduct the operations giving rise to the claimant's privilege***." La. R.S. § 9:4861(5)(a) (emphasis added). The plain language dictates that a privilege may attach to interests that give the lessee the right to conduct the operations and the interest of the lessee in hydrocarbons "produced from the operating interest." *See id.* It

expressly excludes hydrocarbons "produced from the operating interest" attributable to royalty owners or others who are not lessees of the operating interest. La. R.S. § 9:4863(C).

25. It is significant that the statute describes hydrocarbons owned by cost-bearing and non-cost-bearing interest owners as being "produced from the operating interest" – while specifying that only the "operating interest" (and the lessee's interest in hydrocarbons produced from the operating interest) is subject to privileges. La.R.S. 9:4863(A)(1), (C). The statute's focus on the "operating interest" – and "the interest of the operator and participating lessee" in hydrocarbons produced from that interest – indicates that LOWLA is prospective as it relates to interest owners, because it is common knowledge that interests in hydrocarbons (to be produced) can be conveyed from the lessee's "net revenue interest" during operations and production, without reducing the lessee's operating interest. As a result, the statute clearly contemplates that a net revenue interest (without a right to conduct operations) may be assigned without being affected by existing privileges.

26. Because words and phrases must be "read with their context" and "construed according to the common and approved usage of language,"[6] it should be noted that in customary oil and gas terminology an "operating interest" is synonymous with a "working interest" in an oil and gas lease. *See, e.g., Fordoche, Inc., v. Texaco, Inc.*, No. 01-1135-A, 2005 U.S. Dist. LEXIS 47343 *9 (M.D. La. July 15, 2005) (noting "operating interest" is sometimes called a "working interest"); *Kimbell v. United States*, 371 F.3d 257, 267 (5th Cir. 2004) (explaining that "[a] working interest in an oil and gas lease is a cost-bearing operating interest in the property."); *Tufts v. SNG Trading*, No. 87-3015, 1991 U.S. Dist. LEXIS 5288 *2 (E.D. La. April 15, 1991) (explaining that a "working interest" is the "operating interest" under an oil and gas lease);

[6] La. R.S. Ann. 1:3.

*Online Resources, Inc. v. Stone Energy Corp*., No. 99-2006, 1999 U.S. Dist. LEXIS 17057 *11 (E.D. La. October 29, 1999) (recognizing under an oil and gas lease "a working interest or operating interest is created"). The owner of the working interest/operating interest has the exclusive right to exploit the minerals in the land. HOWARD R. WILLIAMS & CHARLES J. MEYERS, MANUAL OF OIL AND GAS TERMS 1207, (11th Ed. 2000). And, the operating interest / working interest bears the production costs associated with operations. *Id*. An overriding royalty is an interest in oil and gas produced at the surface, free of the expense of production.[7] It is by nature an interest that does not share in the costs of development, operations, and production.[8] Also, it is well known that an "operating interest" is distinct and severable from the "net revenue interest" in an oil and gas lease. *See J.B. Hanks Co., Inc. v. Shore Oil Co*., No. 97-CV-0040, 2013 U.S. Dist. LEXIS 184130 *10-11 n. 22 (M.D. La. August 8, 2013). Specifically:

> The working interest [operating interest], or 'WI,' is the basis on which costs and expenses are incurred and borne (the owner of a 100% working interest pays *all* -- 100% -- of the costs and expenses), and the net revenue interest, or "NRI," is the amount of revenue which accrues and relates to the working interest (and out of which such costs and expenses are to be paid). In the simplest of cases, *the NRI is typically 100%* ***minus the lessor's royalty as well as any other burdens on the revenue, if any***.

*J.B. Hanks Co., Inc.*, No. 97-CV-0040, 2013 U.S. Dist. LEXIS 184130 at *10-11 n. 22 (emphasis added).

27. Generally, a working interest owner is free to reduce its net revenue interest (by conveying cost-free interests such as royalties) on a per-well or per-lease basis, while maintaining responsibility for all of the costs and expenses associated with the lease. *See e.g.*, *Freeman v. Block "T" Operating, LLC*, 118 So.3d 1279, 1281 (La. App. 2013) (involving

[7] 2 P. MARTIN & B. KRAMER, WILLIAMS & MEYERS OIL AND GAS LAW § 418.1 at 352.

[8] *Id; see also*, 2 P. MARTIN & B. KRAMER, WILLIAMS & MEYERS OIL AND GAS LAW § 424 at 366.10-366.11.

conveyances of royalties and subsequent conveyances of working interests with lesser net revenue interests).

28. In fact, it is quite common for a working interest owner to assign overriding royalty interests, production payments and other interests in order to aide in the development of the underlying lease (i.e. to pay drilling costs). 2 P. MARTIN & B. KRAMER, WILLIAMS & MEYERS OIL AND GAS LAW § 418.1 at 351 (noting overriding royalties may be granted as consideration for services or as consideration for the financing of drilling operations). And in such instances, the working interest owner may maintain 100% of the working interest (which gives rise to the right to conduct operations) notwithstanding the assignment of overriding royalty interests (or other non-cost-bearing interests), which do <u>not reduce the operating interest/working interest</u>. *See J.B. Hanks Co., Inc.*, No. 97-CV-0040, 2013 U.S. Dist. LEXIS 184130 at *10-11 n. 22. The operating interest remains exactly the same before and after the conveyance of a non-cost-bearing interest. However, the holder's net revenue interest would be reduced by the conveyance, and the assigning operator would receive - through the sale - the value on account of the specific interest sold.

29. It is clear based on LOWLA's language, that the type of interest held is the critical inquiry to determine whether a privilege attaches. And, the fact that the statute focuses on "operating interests" – rather than the entirety of the mineral interests (and net revenue interest) owned by the lessee as of the date of the privilege's inception – evidences an intent to permit the holder of an operating interest to convey cost-free interests (i.e. royalties that may reduce the net revenue interest) in the face of continuing lease operations. Notably, per the statute the operating interest of the lessee would remain subject to the privileges. And, because the operating interest is the interest that enables the lessee to conduct operations, the lessee

would lose the right to operate and any revenue it is entitled to receive – to the extent the operating interest is foreclosed upon. Moreover, any other holders of cost-free interests (i.e. royalty owners) would stand to lose future net revenue if operations are discontinued.

30. This construction of the statute is reinforced by various provisions which focus on the lessee under a lease. For example, the statute provides that privileges, if any, would attach to the proceeds received by and the obligations owed **to a lessee** from the disposition of hydrocarbons subject to the privilege. *See* La. R.S. § 9:4863(A)(4). (emphasis added). This provision focuses on **who** receives or is owed the proceeds to which the privilege may attach (it must be the lessee). This theme is reiterated under the Statue when it discusses when privileges are extinguished: "The privilege over the proceeds from the disposition of hydrocarbons attributable to **an interest of the lessee** is extinguished…" *See* La. R.S. § 9:4869 (A)(1)(3) (emphasis added). It is undisputed that OHA's interest is not that of a lessee and any proceeds OHA receives do not meet this basic requirement of LOWLA.

**(iii) If the Statute Were Intended to Attach to Cost-Free Interests Conveyed Post-Inception, Interests Held by Non-Lessees would Not Be Expressly Carved Out Under the Statute.**

31. If the intent of the Statute was for privileges to attach to cost-free interests conveyed after inception, then there would be no need to expressly carve out hydrocarbons produced "from the operating interest" attributable to royalty owners or others who are not lessees of the "operating interest." *See* La. R.S. § 9:4863(C). Moreover, there would be no need to expressly limit attachment of the privilege to the "operating interest." The statute would simply provide for the attachment to all of the lessee's rights granted under the lease as of the time the privilege is established. There would be no need to carve out non-lessee interests

because such interests would not be subject a privilege unless the lessee assigned a cost-free interest after the inception of the privilege.

32. Because non-lessee interests are expressly carved out and only the "operating interest" is subject to the privilege, the statute is clear that privileges cannot attach to subsequently conveyed royalties. Lien statutes are to be strictly construed against the party claiming the lien, especially as it relates to determining whether a claimant is entitled to a lien. *See Phillips Petroleum Co. v. Best Oilfield Services, Inc.*, 48 F.3d 913, 916 (5th Cir. 1995) (noting Louisiana courts construe privileges strictly when in doubt); *Amoco Production Co. v. Horwell Energy Inc.*, 969 F.2d 146, 148 (5th Cir. 1992) (stating privileges are construed strictly; when in doubt, no privilege is found); *Baker Chemicals, Inc., v. Arkla Exploration Co.*, 545 So. 2d. 709, 711 (La. App. 1989); *Louisiana Materials Co., Inc., v. Atlantic Richfield Co.*, 493 So.2d 1141, 1145 (La. 1986).

33. Even if the Court concludes that privileges attach to a lessee's net revenue interest and to hydrocarbons not yet produced (which OHA denies), the statute expressly carves out overriding royalty interests and non-lessee interests in hydrocarbons produced. *See* La. R.S. § 9:4863(C). The statute simply does not allow privileges to attach to non-lessee interests. Rather, the statute provides that privileges, if any, would attach to the proceeds received by or amounts owed to the lessee on account of the sale of the non-cost-bearing interest. *See* La. R.S. § 9:4863(A)(4). It states that the property subject to a privilege includes "proceeds received by, and the obligations owed to, a lessee from the disposition of hydrocarbons subject to the privilege." La. R.S. § 9:4863(A)(4). The statute defines hydrocarbons to include hydrocarbons not yet produced, to wit: "oil and gas occurring naturally in the earth and any other valuable liquid or gaseous substance found in association with them." La. R.S. § 9:4861(2). It is



507055 000037 16781612.2

undisputed that ATP sold the Term Overriding Royalty and the related hydrocarbons to OHA for $65 million. Accordingly, the Intervenors' privileges (if any) would have attached to the amounts paid by OHA for the purchase of the hydrocarbons, not the Term Overriding Royalty. It would be absurd for LOWLA to impose liability on OHA or its property for operating costs attributable to ATP's operating interest, when OHA never acquired an operating interest and instead paid substantial value to ATP in a bona fide transaction for a non-cost-bearing royalty interest.

34. The Intervenors would have the Court re-write the statute to state that "[t]he privilege does not affect (1) That part of hydrocarbons produced from an operating interest that is owned by a lessor, sub lessor, overriding royalty owner, or other person who is not a lessee of the operating interest [*unless the interest of the non-lessee was part of the net revenue interest that accrued to the operating interest at the time the privilege was established*]." *Cf.*, La. R.S. § 9:4863(C)(1). Obviously, this is not what the statute says, and it should not be re-written for the benefit of the Intervenors. *United States v. Temple*, 105 U.S. 97 (1882) ("When the language is plain, a court has no right to insert words and phrases, so as to incorporate in the statute a new and distinct provision."). Whether a statutory lien attaches to particular property is entirely dependent upon the applicable statutory language, which varies materially under the lien statutes of different states. Under Texas law, for example, statutory mineral liens do not attach, in any respect, to hydrocarbons as they are produced. *See* Tex. Prop. Code § 56.003.

**(iv) OHA's Interpretation of LOWLA is Supported by Important Policies Underlying Oil and Gas Law.**

35. OHA's interpretation of the statute promotes development of oil and gas leases while also protecting the rights of mineral lien claimants and innocent third parties. It promotes flexibility on the part of lessees to raise capital through sales of interests and encourages

continued lease development, which ultimately stands to benefit statutory lien claimants. More specifically, it provides lessees a mechanism to pay outstanding trade debt through sales of future production. If any interest sold by a working interest owner to a non-lessee during lease operations is subject to statutory privileges, sales of such interests will be substantially chilled because there is no adequate due diligence mechanism to protect against such claims. As a result, lease development activities will be dramatically curtailed. Importantly, at any given time during lease operations, trade vendors are performing services on behalf of the operator and liens have incepted under the terms of the statute (even if the trade debt giving rise to such liens is being paid current, within terms). Accordingly, once operations commence, an operator could not lawfully sell interests in the lease, and innocent purchasers willing to pay fair market value for oil and gas interests would be subject to undeterminable (inchoate) lien claims.

36. By the same token, the Intervenors' interpretation of the statute would preclude them from benefitting from potential increases in a lessee's interest after the inception of a lien. That is to say, if there is a temporal limitation with respect to the ownership interests described in LOWLA – then hydrocarbons produced from interests acquired by the lessee, in the same lease but *after the inception date* – would not be subject to the lien. *See* La. R.S. § 9:4863(A)(1) (stating only the interest "under which the operations giving rise to the claimant's privilege are conducted" is subject to the privilege). If, for example, the lessee granted a conditional or defeasible interest under the lease to a third party, prior to the inception of any privileges, any reversion of that interest (and related increase in the lessee's net revenue interest) after the inception of the lien would not be subject to the lien. Contrary to the Intervenors' position, it has been determined that the statute "extends prospectively since production is normally the end of the drilling process." *Ogden Oil Co. v. Servco*, 611 F. Supp. 572, 576 (Dist. M.D. La. 1985).

Accordingly, the terms of the statute apply prospectively as production occurs, and non-lessee interest owners cannot be subject to privileges.

37. Based on the plain language of the statute and the interpretive standards applicable in this case (*stricti juris*), a privilege cannot attach to the Term Overriding Royalties. *See Amoco Production Co. v. Horwell Energy Inc.*, 969 F.2d 146, 148 (5th Cir. 1992) (stating privileges are construed strictly; when in doubt, no privilege is found).

**B. Alternatively, OHA is Entitled to the Statutory Safe Harbor for Hydrocarbon Purchasers**

38. To the extent the Court does not dismiss the Intervenors' claims under section 9:4863, the claims must be dismissed based on the protections to purchasers of hydrocarbons under section 9:4869. Section 9:4869 provides:

> A. The privilege established by R.S. 9:4863(A)(3) and (4) over hydrocarbons, the amount due for their price, and their proceeds is extinguished . . . in the following ways:
>
> (1)(a) The privilege is extinguished **as to hydrocarbons that are sold** or otherwise transferred in a bona fide onerous transaction ***by the lessee*** or other person who severed or owned them at severance ***if the transferee pays for them before he is notified of the privilege by the claimant.***

La. R.S. § 9:4869 (emphasis added).

39. As discussed *supra*, the definition of hydrocarbons includes hydrocarbons yet to be produced – "oil and gas occurring naturally in the earth." La. R.S. § 9:4861(2). Accordingly, section 9:4869 applies to sales of hydrocarbons by a lessee as produced and to be produced. There is no dispute that the Term Overriding Royalty was sold to OHA (by ATP - the lessee) in a "bona fide onerous transaction." Likewise, there is no allegation in any complaint that OHA was served with notice of any privileges prior to the purchase of the Term Overriding Royalty. To the contrary, none of the privileges were filed or noticed at the time OHA purchased the Term

Overriding Royalty. Therefore, even if the privileges attached to the hydrocarbons in the hands of ATP prior to the time of production (which the statute expressly bars), the privileges were extinguished when the hydrocarbons were sold to OHA. Therefore, the Intervenor Complaints must be dismissed.

## IV. CONCLUSION AND PRAYER

For the foregoing reasons, the Intervenor Complaints should be dismissed.

Dated: March 3, 2016.

Respectfully submitted,

**THOMPSON & KNIGHT LLP**

By: */s/ Tye Hancock*

Tye C. Hancock
Bar No. 24032271
Mitchell E. Ayer
Bar No. 01465500
333 Clay Street, Suite 3300
Houston, Texas 77002
Telephone: (713) 654-8111
Facsimile: (713) 654-1871

David M. Bennett
Bar No. 2139600
Katharine Battaia Clark
Bar No. 24046712
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: (214) 969-1700
Facsimile: (214) 969-1751

**ATTORNEYS FOR OHA INVESTMENT CORPORATION**

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on those parties entitled to notice via this Court's ECF system and upon the parties on the attached service list by regular US mail on this 3rd day of March, 2016.

/s/*Tye C. Hancock*
Tye C. Hancock

## SERVICE LIST

Bennu Oil & Gas, LLC
1330 Post Oak Blvd. Ste. 1600
Houston, TX 77056-3072

**DEFENDANT**

Andrew J. Gallo
MORGAN, LEWIS & BOCKIUS LLP
One Federal St
Boston, MA 02110
andrew.gallo@morganlewis.com

Sean B. Davis
WINSTEAD PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, TX 77002
sbdavis@winstead.com

Phillip L Lamberson
WINSTEAD PC
500 Winstead Building
2728 N. Harwood Street
Dallas, TX 75201
plamberson@winstead.com

**ATTORNEYS FOR BENNU OIL & GAS, LLC**

Rodney D. Tow
TOW AND KOENIG PLLC
26219 Oak Ridge Drive
The Woodlands, TX 77380
rtow@towkoenig.com

**TRUSTEE**

Charles M. Rubio
DIAMOND MCCARTHY, LLP
909 Fannin Street, Suite 1500
Houston, TX 77010
crubio@diamondmccarthy.com

**COUNSEL FOR TRUSTEE IN MAIN BANKRUPTCY**

Chris Lindstrom
COOPER & SCULLY, P.C.
815 Walker Street, Suite 1040
Houston, Texas 77002
Chris.Lindstrom@cooperscully.com

Timothy Micah Dortch
COOPER & SCULLY, P.C.
900 Jackson Street, Suite 100
Dallas, TX 75202
Micah.Dortch@cooperscully.com

**ATTORNEY IN CHARGE FOR RODNEY TOW, TRUSTEE**

Robin B. Cheatham
ADAMS AND REESE LLP
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139-4500
robin.cheatham@arlaw.com

**ATTORNEYS FOR HARVEY GULF INTERNATIONAL MARINE, LLC, HORNBECK OFFSHORE SERVICES, L.L.C., EXPEDITORS & PRODUCTION SERVICES, INC., EPS CARGO HANDLERS COMPANY, AND EPS LOGISTICS COMPANY**

Paul M Davis
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, TX 77002
pauldavis@andrewskurth.com

John J. Sparacino
VORYS, SATER, SEYMOUR & PEASE LLP
700 Louisiana Street, Suite 4100
Houston, Texas 77002
jjsparacino@vorys.com

**ATTORNEYS FOR THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.**

Brian D. Wallace
Allen C. Miller
Evan Dicharry
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
brian.wallace@phelps.com
allen.miller@phelps.com
evan.dicharry@phelps.com

**ATTORNEYS FOR CREDITORS, GULF OFFSHORE LOGISTICS, L.L.C., MARTIN HOLDINGS, L.L.C., C-PORT/STONE L.L.C., OFFSHORE SERVICE VESSELS, L.L.C. AND BARRY GRAHAM OIL SERVICE, L.L.C.**

Phil F. Snow
Kenneth Green
Ross Spence
SNOW FOGEL SPENCE LLP
2929 Allen Parkway, Suite 4100
Houston, TX 77019
philsnow@snowfogel.com
kennethgreen@snowfogel.com
rossspence@snowfogel.com

**ATTORNEYS FOR SCHLUMBERGER TECHNOLOGY CORPORATION, M-I L.L.C. D/B/A M-I SWACO, SMITH INTERNATIONAL, INC., WIRELINE CONTROL SERVICES, LLC, NABORS OFFSHORE CORPORATION, CANRIG DRILLING TECHNOLOGY, LTD., AND SUPREME SERVICE & SPECIALTY CO. INC.**

Michael D. Rubenstein
LISKOW & LEWIS
1001 Fannin Street, Ste. 1800
Houston, Texas 77002
mdrubenstein@liskow.com

**ATTORNEYS FOR CHAMPION TECHNOLOGIES, INC. AND OFFSHORE ENERGY SERVICES INC.**

Stewart F. Peck
Christopher T. Caplinger
Benjamin W. Kadden
LUGENBUHL, WHEATON, PECK, RANKIN 601 Poydras Street, Suite 2775
New Orleans, LA 70130
speck@lawla.com
ccaplinger@lawla.com
bkadden@lawla.com

**ATTORNEYS FOR WARRIOR ENERGY SERVICES CORPORATION, FASTORQ, L.L.C., STABIL DRILL SPECIALTIES, L.L.C., WORKSTRINGS INTERNATIONAL, L.L.C., AND SUPERIOR ENERGY SERVICES, L.L.C.**

J. Christopher Kohn
Kathie Shahan
Victor W. Zhao
Commercial Litigation Branch
United States Department of Justice
P.O. Box 875
Ben Franklin Station
Washington D.C. 20044
victor.w.zhao@usdoj.gov

**COUNSEL FOR THE UNITED STATES**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 12-36187 |
| | § | |
| ATP OIL & GAS CORPORATION, | § | |
| | § | |
| Debtor | § | Chapter 7 |
| | § | |
| OHA INVESTMENT CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | ADVERSARY NO. 12-03443 |
| | § | |
| ATP OIL & GAS CORPORATION, | § | |
| And BENNU OIL & GAS, LLC | § | |
| | § | |
| Defendants. | § | |

**ORDER GRANTING OHA INVESTMENT CORPORATION'S SECOND AMENDED MOTION TO DISMISS THE COMPLAINTS IN INTERVENTION FILED BY THE STATUTORY LIEN CLAIMANTS**

THE COURT, having considered *OHA Investment Corporation's Amended Motion to Dismiss the Complaints in Intervention filed by the Statutory Lien Claimants* (the "Motion"), all responsive papers, and replies, if any, ORDERS the following:

1. The Motion is GRANTED;

1. Each of the Intervenor Complaints, as defined in the Motion, (Dkt. Nos. 62-67 and 282) are hereby dismissed *with prejudice*.

DATED: ______________________________.

______________________________
THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE



507055 000037 16814950.1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 12-36187 |
| | § | |
| ATP OIL & GAS CORPORATION, | § | |
| | § | |
| Debtor | § | Chapter 7 |
| | § | |
| OHA INVESTMENT CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | ADVERSARY NO. 12-03443 |
| | § | |
| ATP OIL & GAS CORPORATION, | § | |
| And BENNU OIL & GAS, LLC | § | |
| | § | |
| Defendants. | § | |

**OHA INVESTMENT CORPORATION'S MOTION TO DISMISS
THE AMENDED COMPLAINTS IN INTERVENTION FILED BY THE
STATUTORY LIEN CLAIMANTS**

[Relates to Docket Numbers 298, 299, 300, 303]

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.

EXHIBIT
B

COMES NOW OHA Investment Corporation f/k/a NGP Capital Resources Company ("OHA") and files this motion to dismiss (the "Motion") the amended complaints in intervention [Dkt. Nos. 298, 299, 300, 303] (collectively, the "Amended Intervenor Complaints") filed in this proceeding by certain alleged lien claimants (the "Intervenors" or "Statutory Lien Claimants"), and would respectfully show the Court as follows:

## I. RELIEF REQUESTED AND SUMMARY OF ARGUMENT

1. OHA requests that the Court dismiss the Amended Intervenor Complaints for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012.

2. The Amended Intervenor Complaints fail to state a plausible claim against OHA because they do not allege, in accordance with the Louisiana Oil Well Lien Act ("LOWLA"), that OHA was actually notified in writing of the respective privileges prior to its purchase of an interest in hydrocarbons. Under section 9:4868(C), in order to provide notice of the alleged privilege, a copy of the statement of privilege must be mailed to the purchaser by certified or registered mail to the proper address or it must be received by the purchaser or at the office of the purchaser. Further, section 9:4869(A)(1)(a) (even if read independently) clearly and unambiguously requires affirmative written notice by the lien claimant, directed to the purchaser, that results in actual notice of the alleged privilege. Because there is no allegation in any complaint that a claimant affirmatively provided written notice to OHA that it was asserting a privilege on account of unpaid work, the Amended Intervenor Complaints must be dismissed.

3. The Intervenors' allegations of "constructive notice" are insufficient to state a claim because LOWLA specifically requires actual written notice. And, even if constructive

notice were permitted, it is clear that there is no construction of the Intervenors' factual allegations that will support their claims.

## II. BACKGROUND

4. On August 17, 2012 (the "Petition Date"), ATP filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.

5. Prior to the Petition Date, pursuant to certain purchase and sale agreements and duly recorded conveyances, OHA purchased term overriding royalties (the "Term Overriding Royalties") in certain outer continental shelf oil, gas, and mineral leases to submerged lands – known generally as the "Gomez and Telemark Properties" – for $65 million. The original conveyance was recorded on June 23, 2011. [Dkt. No. 293 at 2]. The first supplement and amendment was recorded on January 6, 2012. [Dkt. No. 293 at 2]. The second supplement and amendment was recorded on July 23, 2012. [Dkt. No. 293 at 2]. Collectively, the original conveyance as amended and supplemented is referenced herein as the "Conveyance". Under the Conveyance, OHA is entitled to receive its proportionate share of the proceeds of any and all hydrocarbons produced, saved and sold from the Properties for each production month until such time as the sum of the royalty proceeds actually received by OHA under the Conveyance equals the "Total Sum" as defined in section 3.3 of the Conveyance.

6. On October 17, 2012, OHA filed its Complaint [Dkt. No. 1] (the "Complaint") in this proceeding against ATP. On December 14, 2012, OHA filed its First Amended Complaint [Dkt. No. 69] (the "Amended Complaint"). As more fully described in the Amended Complaint, OHA sought a declaratory judgment that the Term Overriding Royalties are property of OHA and/or are not property of the ATP bankruptcy estate. OHA further sought a declaration that the Conveyance and the instruments giving rise to the Conveyance are not executory contracts that

may be rejected. ATP contended that the Term Overriding Royalties were "disguised financings" or loans.

7. On or before November 27, 2012, the Intervenors intervened – claiming that they hold statutory liens or "privileges" under Louisiana law that extend to the Term Overriding Royalties.

8. On November 29, 2012, the Court entered an Amended Case Management Order, bifurcating the issues before the Court such that the issues of "(i) whether the conveyance(s) and transaction(s) between Plaintiffs and Defendant constituted outright transfers of ownership of the subject interest to Plaintiffs such that the subject interests are not property of the Debtor's estate; and (ii) whether the conveyances of the subject interests are executory contracts or leases which the Debtor may reject under 11 U.S.C. § 365" (defined in the Order as the "Financing Issues") will be tried in the first phase. And, any remaining issues (the "Phase II Issues") will be adjudicated under a separate case management order to be issued after a determination of the Financing Issues. The Order required that, until a determination of the Financing Issues, "further pleadings in this proceeding shall relate to the determination of the Financing Issues." [*See* Dkt. No. 57 at para. 1].

9. On December 13, 2012, the original Intervenor complaints were filed.[1] On December 19, 2012, *OHA filed its Motion to Strike, Dismiss, or Alternatively, Abate Complaints in Intervention filed by Certain Alleged Lien Claimants in Violation of Amended Case Management Order* [Dkt. No. 70]. Because the original Intervenor complaints did not relate to

[1] The complaints asserted claims against OHA for declaratory relief: (1) that they hold statutory privileges under the Louisiana Oil Well Lien Act ("LOWLA") against ATP's operating or leasehold interest in the Gomez and/or Telemark Properties; (2) that the Term Overriding Royalties were transferred to OHA subject to their privileges; and (3) that payments made to OHA must be disgorged until their privileges are satisfied.

Case 4:16-cv-02556 Document 3-2 Filed in TXSB on 09/01/16 Page 54 of 75

the Financing Issues, they were abated along with Phase II of the litigation pursuant to the Amended Case Management Order. [Dkt. No. 293 at 4].

10. On February 4, 2016, the Court fully and finally resolved the Financing Issues and the abatement was terminated.[2] [Dkt. No. 293 at 4]. And, OHA filed its Second Amended Motion to Dismiss the Intervenor Complaints [Dkt. No. 284] and its Motion to Withdraw the Reference [Dkt. No. 278]. On May 13, 2016, the Court entered its order granting (in part) OHA's Second Amended Motion to Dismiss [Dkt. No. 294] along with its Memorandum Opinion [Dkt. No. 293].

11. Pursuant to the Memorandum Opinion, the Court determined that under La. R.S. 9:4869 OHA was a purchaser of an interest in hydrocarbons and if it "purchased an interest in hydrocarbons (or proceeds therefrom) without notice of the M&M Intervenors' privileges in a bona fide transaction, it would take the ORRIs free and clear of the M&M Intervenor's rights." [Dkt. No. 293 at 13]. Accordingly, the Intervenors were ordered to file amended complaints to specifically plead whether OHA had notice of their alleged privileges at the time it paid the purchase price. [Dkt. No. 293 at 14-15], [Dkt. No. 294].

12. On May 27, 2016, the Intervenors filed their amended complaints at Docket Nos. 298, 299, 300 and 303 (the "Amended Intervenor Complaints"). With respect to the issue of notice, none of the Intervenors allege that they notified OHA of any claims of privilege prior to its purchase of the Term Overriding Royalties. Instead, each of the Amended Intervenor Complaints allege that OHA had "constructive knowledge" of activities giving rise to their privileges because ATP publicly disclosed certain ongoing operations, the existence of

[2] The Agreed Final Judgment [Dkt. No. 276] determined the nature of the interest that OHA purchased from ATP and is binding on the Intervenors. [Dkt. No. 276 at 6]. Under the Final Agreed Judgment, it was determined that OHA purchased a term overriding royalty interest also known as a production payment, which is by definition – and under the terms of the Final Agreed Judgment – an interest in liquid or gaseous hydrocarbons. [Dkt. No. 276 at 5]; 11 U.S.C. § 101(56A).

agreements to pay certain vendors, and well permits. [*See e.g.*, Dkt. No. 298 at 5-6]. The Amended Intervenor Complaints also allege on "information and belief" that OHA had "actual notice" that the claimants were providing goods and services to ATP. [*See e.g.*, Dkt No. 298 at 5-6]. Further, none of the Amended Intervenor Complaints allege that their alleged privileges were recorded prior to the Conveyance. Accordingly, OHA hereby files this Motion to Dismiss the Amended Complaints.

## III. ARGUMENT

### (i) Standard of Review

13. A complaint should be dismissed if it "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering such a motion, although the Court accepts all of the factual allegations in the complaint as true, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 106 S. Ct. 2932 (1986). Dismissal is appropriate where "it is clear the plaintiff can prove no set of facts in support of the claims in the complaint." *Powell v. U.S.*, 945 F.2d 374, 375 (11th Cir. 1991). Therefore, a court should dismiss a complaint "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall County Bd. Of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

14. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusion, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007), *quoting Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986). Further, the plaintiff's factual allegations, when assumed to be true, "must be enough to raise a

right to relief above the speculative level. . . .” *Id*. at 555, 127 S. Ct. at 1965. The facts must be sufficient to demonstrate that the claim is “plausible” on its face, and to be plausible, the plaintiff must plead factual content that allows a reasonable inference that the Defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the Court is unable to draw a reasonable inference that the Defendant is liable, the complaint must be dismissed. *See id*. And, the court has no discretion as to whether to dismiss a complaint that it determines is formally or substantively insufficient. *Moore v. Carwell*, 168 F.3d 234 (5th Cir. 1999).

**A. The Intervenors Have No Plausible Claim Because They Do Not Allege That They Notified OHA of their Respective Privileges Pursuant to La. R.S. § 9:4869**

**(i) LOWLA Requires Actual Notice in Writing of the Alleged Privilege Under § 9:4868(C)**

15. As explained in the Court’s Memorandum Opinion, section 9:4869 provides that privileges are extinguished as to production payments “***if the transferee pays for them before he is notified of the privilege by the claimant.***” La. R.S. § 9:4869 (emphasis added). The statute specifically dictates the form and content of the “statement of privilege,” which provides notice of the privilege – and by the express terms of the statute – must be filed in the mortgage records and notice delivered in order for the privilege to exist. La. R.S. §§ 9:4868; 9:4867; 9:4865. Further, it specifically addresses how such notices to the operator and others must be delivered:

> C. A notice is delivered when:
>
> (1) It is mailed by certified or registered mail properly addressed with sufficient postage affixed.
>
> (2) If not mailed by certified or registered mail when either:
>
> (a) It is received by the person to whom it is sent.
> (b) It is received at the office of the person to whom it is addressed.

La. R.S. § 9:4868(C).

16. Section 9:4868(C) directs how a notice to a purchaser of hydrocarbons must be delivered in order to avoid extinguishment of the privilege in connection with the sale. *Cf.*, La. R.S. § 9:4868(A)(1)(a). A written notice must be (1) mailed to the purchaser by certified or registered mail properly addressed with sufficient postage; or (2) it must be received by the purchaser or at the office of the purchaser. *See* La. R.S. § 9:4868(C). Sections 9:4868 and 9:4869 contemplate a mechanism for actual written notice of a privilege to be delivered to a purchaser by the lien claimant. *Compare, Wong v. East Baton Rouge Parish Sheriff's Office*, 522 So.2d 1134, 1139 (La. App. 1st Cir. 1988) (interpreting the statutory language "sheriff shall notify" - from La. R.S. 13:3886 - as requiring "the *giving of actual notice*"); 58 Am. Jur. 2d Notice § 4 (2016) (defining actual notice as "notice expressly and actually given"); Black's Law Dictionary 1227 (10th ed. 2014) (defining actual notice as "[n]otice given directly to, or received personally by, a party"). "Where a statute provides the manner, form, and time of notice, the notice must conform to the prescribed provisions." 58 Am. Jur. 2d Notice § 9 (2016).

17. There is no allegation in any complaint that OHA was served with written notice (by certified mail, registered mail or other means) of any claims of privilege prior to its purchase of the Term Overriding Royalties. Accordingly, there is no plausible claim that the privileges attached when the Term Overriding Royalties were sold to OHA. And, the Amended Intervenor Complaints must be dismissed.

**(ii) Even if the Court Concludes that the Notice Provisions of 9:4868(C) Do Not Apply to Notices Served on Purchasers of Interests in Hydrocarbons, The Lien Claimants Were Still Required to Directly Notify OHA of Their Alleged Privileges In Writing**

18. To the extent the Court concludes, that the notice provisions under section 9:4868(C) only pertain to notices served on the operator (which OHA denies), the language of

section 9:4869(A)(1)(a) – "notified of the privilege by the claimant" – still requires actual notice of the alleged privilege directed to a purchaser by the claimant.[3] At a minimum, this includes affirmative written notice by the lien claimant, directed to the purchaser, that results in actual notice of the privilege on account of the alleged unpaid work. *Cf, Correct Craft IP Holdings, LLC v. Trick Towers, LLC*, 2013 U.S. Dist. LEXIS 164482 at *5, No. 6:13-cv-1052 (Md. Dist. FL Nov., 1, 2013) (interpreting language being "notified of the infringement" as requiring affirmative act by claimant that actually informs infringer); *Emcore Corp. v. Optium Corp.*, 2008 U.S. Dist. LEXIS 59794 at *27, No. 6-1202 (W.D. PA. Aug. 5, 2008) (same); *Lans v. Digital Equipment Corp.*, 252 F.3d 1320, 1327-28 (Fed. Cir. 2001) (same). "Where a statute requires notice to be given, but does not specify the type of notice, **actual personal notice is required**, and the notice must be **personally served** on the person to be notified." 58 Am Jur 2d, Notice § 9 (2016) (emphasis added). Further, "[w]henever notice is required or authorized by statute or judicial ruling, the notice must be in writing." 58 Am Jur 2d, Notice § 10 (2016). "A written notice should be clear, definite, explicit, and not ambiguous; a notice that is ambiguous, misleading, and unintelligible to the average person who is to be affected by it is deemed insufficient." *Id*. The requirement of "notification of **the privilege** by **the claimant**" clearly and unambiguously requires each claimant to serve notice of its respective privilege on the purchaser before the purchaser pays the purchase price in order to avoid extinguishment on account of a sale. *See* La. R.S. § 9:4869(C).

[3] Words and phrases shall be read in context and shall be construed accoding to the common and approved usage of the language. La. R.S. 1:3. The words of a law must be given their generally prevailing meaning. La. C.C. art. 11. When a law is clear and free from all ambiguity, it must be given effect as written. La. R.S. 1:4; *Bunch v. Town of St. Francisville*, 446 So.2d 1357 (La. App. 1st Cir. 1984).

19. There is no allegation in any of the Amended Intervenor Complaints that any claimant affirmatively provided actual written notice to OHA that they were asserting an alleged privilege for unpaid work. Accordingly, the Amended Complaints must be dismissed.

**B. Even If LOWLA Permits "Constructive Notice" To Be Effective Against Purchasers of Hydrocarbons (It Does Not), The Lien Claimants Do Not State a Plausible Claim**

20. As demonstrated above, LOWLA specifically eliminates the concept of constructive notice to purchasers of production payments under sections 9:4868 and 9:4869 by requiring actual written notice of the alleged privilege served by the claimant. However, even if constructive notice could be effective against a purchaser of an interest in hydrocarbons (which OHA denies), the allegations of the lien claimants fail to state a claim.

> "Constructive notice" is notice that the law imputes to a person not having personal information or knowledge. In fact, constructive notice is neither notice nor knowledge, and the term "constructive" is the mere trademark of a fiction resorted to for the promotion of sound policy under certain circumstances by treating legal rights and interests of parties as though they had actual notice or knowledge.

58 Am. Jur. 2d Notice § 6 (2016).

21. The Lien Claimants allege that OHA had "constructive knowledge" of the activities giving rise to their privileges because ATP publicly disclosed its ongoing operations, the existence of agreements to pay vendors and well permits. [*See e.g.*, Dkt. No. 298 at 5-6]. However, this does not purport to impute knowledge to OHA of existing lien claims being asserted against the underlying properties. The nature of producing oil and gas wells require continuing operations. At any given time there are goods, labor and services being performed in connection with drilling, completing, testing, producing, reworking, or abandoning oil and gas wells. Certain vendors may be paid within contract terms by the operator and certain vendors may be paid late. If constructive notice is permitted under section 9:4869 and knowledge of

lease operations and well permits is sufficient to effect such notice, then the safe harbor under 9:4869 would be meaningless. Every purchaser of production or an interest in production has knowledge that operations are ongoing; thus, every purchaser of an interest in hydrocarbons would be deemed to have notice of any and all unpaid vendor claims. Even if constructive notice is permitted under LOWLA (which it isn't), knowledge of ongoing operations is clearly insufficient to impute knowledge of asserted lien claims. Rather, recordation of privileges in the applicable real property records - prior to the payment of the purchase price – would be the means to effectuate "constructive notice," and none the Lien Claimants have alleged that such notice existed. In any event, the statute requires that the purchaser be actually "notified of **the privilege** by **the claimant**." La. R.S. § 9:4869(C) (emphasis added).

22. Moreover, the privileges created under the statute are by nature inchoate and secret until recorded and noticed pursuant to the statute. Thus, unless notified of a privilege by the claimant, hydrocarbon purchasers cannot know whether any particular service provider (i) will be paid by the operator in the course of operations or (ii) will affirmatively take steps to perfect a privilege. *See* La. R.S. § 9:4869(C). Presumably, this is one reason why the statute requires actual notice. In fact, the statute contemplates that the purchaser of the applicable interest is paying the purchase price – which would be available to pay the cost of operations. *See* La. R.S. § 9:4863(A)(4) (the privilege attaches to "proceeds received by, and the obligations owed to, a lessee from the disposition of hydrocarbons subject to the privilege.") In that vein, it has been held that general knowledge of ongoing work is insufficient to provide constructive notice of liens when claimants do not comply with the notice and recordation requirements under the terms of the applicable lien statute. *See Bank of Bernice v. D'Arbonne Lake Lodge, Inc.*, 541 So.2d 354, 357-58 (La. App. – 2nd Cir. 1989). In *Bank of Bernice*, the lien claimant argued that



507055 000037 17410249.4

it was entitled to prime the bank's lien position because the bank knew that its loan was being made to finance construction work on the mortgaged property, and as a result, the bank should not be treated as a "third person" under the lien statute. *Bank of Bernice*, 541 at 357. The Court held "[t]he fact that the bank financed the construction does not, as the contractor argues, give the bank notice that the general contractor intends to claim a privilege on the property, but 'would have rather led the bank to conclude there would be no builder's lien, since the money was being provided to pay for the work." *Bank of Bernice*, 541 at 358. Similarly, OHA paid for its interest in hydrocarbons in full, without being actually notified of any privileges, and it could not know whether vendors would be paid for their services. *Cf., Bank of Bernice*, 541 at 358.

23. It is important to note, that if the Intervenors' theory is correct and the public real property records[4] and actual notice under LOWLA cannot be relied upon in this context, then purchasers of production payments will *always* be subject to continuing liability based on potential vendor claims. Considering the Court's interlocutory finding that privileges can attach to subsequently conveyed royalty interests,[5] this is particularly troubling because LOWLA permits the secret inception of privileges as of the date of first work and the continuation of such privileges indefinitely as activity continues (even if the trade debt giving rise to such liens is paid current for years prior to and after the sale of a production payment). *See* La. R.S. § 9:4864(A), (C) (stating privilege is established when services begin and extinguished on lapse in activity of ninety consecutive days). In other words, based on the Intervenors' theory, privileges could remain attached indefinitely to any sale of an interest in hydrocarbons, and the recipient of such

---

[4] Generally, under the public records doctrine a purchaser dealing with immovable property need only look to the public real property records, and if no adverse claims appear, he may take good title to the property despite any actual knowledge of unrecorded claims. *Port Arthur Towing Company v. Owens-Illinois, Inc*., 352 F. Supp 392, 398 (Dist. W.D. La. 1972). It is well settled that all persons have constructive notice of the existence and contents of recorded instruments affecting immovable property. *Id*.

[5] Dkt. No. 293 at 11-13. OHA respectfully disagrees with and reserves all rights in connection with this finding.

interest may receive its proportionate share of production for years – without knowing that the hydrocarbon proceeds are subject to the secret privilege of a lien claimant.

24. The requirement of actual notice to purchasers of production payments promotes development of oil and gas leases while also protecting the rights of mineral lien claimants and innocent third parties. It promotes flexibility on the part of lessees to raise capital through sales of interests in hydrocarbons and encourages continued lease development, which ultimately stands to benefit statutory lien claimants. More specifically, it provides lessees a mechanism to pay outstanding trade debt through sales of future production. If bona fide production payments sold during lease operations are subject to statutory privileges based on "constructive notice," sales of such interests will be substantially chilled because there is no due diligence mechanism to protect against such claims.

## IV. CONCLUSION AND PRAYER

For the foregoing reasons, the Amended Intervenor Complaints should be dismissed.

Dated: June 9, 2016.

Respectfully submitted,

**THOMPSON & KNIGHT LLP**

By: /s/ *Tye Hancock*

Tye C. Hancock
Bar No. 24032271
Mitchell E. Ayer
Bar No. 01465500
333 Clay Street, Suite 3300
Houston, Texas 77002
Telephone: (713) 654-8111
Facsimile: (713) 654-1871

David M. Bennett
Bar No. 2139600
Katharine Battaia Clark
Bar No. 24046712
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: (214) 969-1700
Facsimile: (214) 969-1751

**ATTORNEYS FOR OHA INVESTMENT CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on those parties entitled to notice via this Court's ECF system and upon the parties on the attached service list by regular US mail on this 9th day of June, 2016.

/s/*Tye C. Hancock*
Tye C. Hancock

**SERVICE LIST**

Bennu Oil & Gas, LLC
1330 Post Oak Blvd. Ste. 1600
Houston, TX 77056-3072

**DEFENDANT**

Andrew J. Gallo
MORGAN, LEWIS & BOCKIUS LLP
One Federal St
Boston, MA 02110
andrew.gallo@morganlewis.com

Sean B. Davis
WINSTEAD PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, TX 77002
sbdavis@winstead.com

Phillip L Lamberson
WINSTEAD PC
500 Winstead Building
2728 N. Harwood Street
Dallas, TX 75201
plamberson@winstead.com

**ATTORNEYS FOR BENNU OIL & GAS, LLC**

Rodney D. Tow
TOW AND KOENIG PLLC
26219 Oak Ridge Drive
The Woodlands, TX 77380
rtow@towkoenig.com

**TRUSTEE**

Charles M. Rubio
DIAMOND MCCARTHY, LLP
909 Fannin Street, Suite 1500
Houston, TX 77010
crubio@diamondmccarthy.com

**COUNSEL FOR TRUSTEE IN MAIN BANKRUPTCY**

Chris Lindstrom
COOPER & SCULLY, P.C.
815 Walker Street, Suite 1040
Houston, Texas 77002
Chris.Lindstrom@cooperscully.com

Timothy Micah Dortch
COOPER & SCULLY, P.C.
900 Jackson Street, Suite 100
Dallas, TX 75202
Micah.Dortch@cooperscully.com

**ATTORNEY IN CHARGE FOR RODNEY TOW, TRUSTEE**

Robin B. Cheatham
ADAMS AND REESE LLP
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139-4500
robin.cheatham@arlaw.com

**ATTORNEYS FOR HARVEY GULF INTERNATIONAL MARINE, LLC, HORNBECK OFFSHORE SERVICES, L.L.C., EXPEDITORS & PRODUCTION SERVICES, INC., EPS CARGO HANDLERS COMPANY, AND EPS LOGISTICS COMPANY**

Paul M Davis
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, TX 77002
pauldavis@andrewskurth.com

John J. Sparacino
VORYS, SATER, SEYMOUR & PEASE LLP
700 Louisiana Street, Suite 4100
Houston, Texas 77002
jjsparacino@vorys.com

**ATTORNEYS FOR THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.**

Brian D. Wallace
Allen C. Miller
Evan Dicharry
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
brian.wallace@phelps.com
allen.miller@phelps.com
evan.dicharry@phelps.com

**ATTORNEYS FOR CREDITORS, GULF OFFSHORE LOGISTICS, L.L.C., MARTIN HOLDINGS, L.L.C., C-PORT/STONE L.L.C., OFFSHORE SERVICE VESSELS, L.L.C. AND BARRY GRAHAM OIL SERVICE, L.L.C.**

Phil F. Snow
Kenneth Green
Ross Spence
SNOW FOGEL SPENCE LLP
2929 Allen Parkway, Suite 4100
Houston, TX 77019
philsnow@snowfogel.com
kennethgreen@snowfogel.com
rossspence@snowfogel.com

**ATTORNEYS FOR SCHLUMBERGER TECHNOLOGY CORPORATION, M-I L.L.C. D/B/A M-I SWACO, SMITH INTERNATIONAL, INC., WIRELINE CONTROL SERVICES, LLC, NABORS OFFSHORE CORPORATION, CANRIG DRILLING TECHNOLOGY, LTD., AND SUPREME SERVICE & SPECIALTY CO. INC.**

Michael D. Rubenstein
LISKOW & LEWIS
1001 Fannin Street, Ste. 1800
Houston, Texas 77002
mdrubenstein@liskow.com

**ATTORNEYS FOR CHAMPION TECHNOLOGIES, INC. AND OFFSHORE ENERGY SERVICES INC.**

Stewart F. Peck
Christopher T. Caplinger
Benjamin W. Kadden
LUGENBUHL, WHEATON, PECK, RANKIN 601 Poydras Street, Suite 2775
New Orleans, LA 70130
speck@lawla.com
ccaplinger@lawla.com
bkadden@lawla.com

**ATTORNEYS FOR WARRIOR ENERGY SERVICES CORPORATION, FASTORQ, L.L.C., STABIL DRILL SPECIALTIES, L.L.C., WORKSTRINGS INTERNATIONAL, L.L.C., AND SUPERIOR ENERGY SERVICES, L.L.C.**

J. Christopher Kohn
Kathie Shahan
Victor W. Zhao
Commercial Litigation Branch
United States Department of Justice
P.O. Box 875
Ben Franklin Station
Washington D.C. 20044
victor.w.zhao@usdoj.gov

**COUNSEL FOR THE US**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re:<br><br>ATP OIL & GAS CORPORATION,<br><br>Debtor | §<br>§<br>§<br>§<br>§<br>§ | Case No. 12-36187<br><br><br><br>Chapter 7 |
| OHA INVESTMENT CORPORATION,<br><br>Plaintiff,<br>v.<br><br>ATP OIL & GAS CORPORATION,<br>And BENNU OIL & GAS, LLC<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br>ADVERSARY NO. 12-03443 |

**ORDER GRANTING OHA INVESTMENT CORPORATION'S MOTION TO DISMISS THE AMENDED COMPLAINTS IN INTERVENTION FILED BY THE STATUTORY LIEN CLAIMANTS**

THE COURT, having considered *OHA Investment Corporation's Motion to Dismiss the Amended Complaints in Intervention filed by the Statutory Lien Claimants* (the "Motion"), all responsive papers, and replies, if any, ORDERS the following:

1. The Motion is GRANTED;

2. Each of the Intervenor Complaints, as defined in the Motion, (Dkt. Nos. 298, 299, 300, 303) are hereby dismissed *with prejudice*.

3. This is a final order.

DATED: ______________________________.

____________________________________
THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE



507055 000037 17536423.1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 12-36187** |
| | § | |
| **ATP OIL & GAS CORPORATION,** | § | |
| | § | |
| **Debtor** | § | **Chapter 7** |
| | § | |
| **OHA INVESTMENT CORPORATION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **ADVERSARY NO. 12-03443** |
| | § | |
| **ATP OIL & GAS CORPORATION,** | § | |
| **BENNU OIL & GAS, LLC** | § | |
| | § | |
| **Defendants.** | § | |

**REPLY OF OHA INVESTMENT CORPORATION**
**IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINTS IN INTERVENTION FILED BY THE STATUTORY LIEN CLAIMANTS**
**[Relates to Dkt. Nos. 316, 310, 298, 299, 300, 303]**

OHA Investment Corporation f/k/a NGP Capital Resources Company ("OHA") submits this reply brief (this "Reply") in support of its *Motion to Dismiss the Amended Complaints in Intervention Filed by the Statutory Lien Claimants* [Dkt. No. 310] (the "Supplemental Motion to Dismiss") and in reply to the *Joint Response of Statutory Lienholder Intervenors to OHA Investment Corporation's Fourth Motion to Dismiss* [Dkt. No. 316] (the "Response") pursuant to Rule 12 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure.[1]

[1] All defined terms used herein shall have the meanings ascribed in the Motion to Dismiss unless otherwise specified.





EXHIBIT
C

## I. SUMMARY OF REPLY

Once again, the Intervenors mischaracterize this Court's orders. The Intervenors' allegations that OHA filed "four separate motions to dismiss" and that the Court previously considered and determined the issue of "notice" in connection with OHA's original motion to dismiss are patently false. Under the Court's order and Memorandum Opinion, the issue of whether the Intervenors could sufficiently plead a claim against OHA under section 9:4869 was left open for further consideration.

OHA's Supplemental Motion to Dismiss, which is limited to the issue of "notice," was filed in accordance with this Court's ruling on OHA's Motion to Dismiss and is completely dispositive of the Amended Intervenor Complaints. It is not procedurally improper because Rule 12(g)(2) only purports to limit successive motions to dismiss when a defense or objection could have been raised in an earlier motion, but was *omitted*. OHA did not fail to raise its section 9:4869 defense under Rule 12(b). Moreover, recently many courts and commentators have completely rejected the applicability of Intervenors' Rule 12(g) argument in the context of Rule 12(b)(6). The policy behind Rule 12(g) is to prevent piecemeal litigation in which a defendant moves to dismiss on one ground, loses, then files a second motion on another ground. That policy is absent as it relates to successive motions under Rule 12(b)(6) for failure to state a claim— because a defendant may still raise the issue in a motion for judgment on the pleadings or at trial. If the rule were otherwise, a party could simply raise the same 12(b)(6) argument again in a motion for judgment on the pleadings, a motion for summary judgment, or at trial. That would be needlessly inefficient, costly and time consuming. In any event, OHA's 12(b)(6) defense was not initially omitted and Rule 12(g) is not implicated.

The Intervenors offer no authorities or explanation as to how the specific statutory language "notified of the privilege by the claimant" is to be accomplished without an affirmative

written notice by the claimant directed to the purchaser that results in actual notice. Instead, the bulk of the Intervenors' Response is focused on revisiting and reconsidering the Court's ruling on OHA's Motion to Dismiss as it relates to the applicability of section 9:4869 to purchasers of production payments. Their arguments are erroneous, and OHA's Supplemental Motion to Dismiss should be granted.

## II. RELEVANT PROCEDURAL HISTORY

1. On December 13, 2012, the original Intervenor complaints were filed in violation of this Court's scheduling order.[2] Because the original Intervenor complaints did not relate to the Financing Issues, they were abated along with Phase II of the litigation pursuant to the Amended Case Management Order. [Adv. Dkt. No. 293 at 3-4]. Because the original Intervenor complaints were not Phase I pleadings, the complaints were not live and did not require a pre-answer motion or response. However, out of an abundance of caution, *OHA filed its Motion to Strike, Dismiss, or Alternatively, Abate Complaints in Intervention filed by Certain Alleged Lien Claimants in Violation of Amended Case Management Order* [Dkt. No. 70] (the "Motion to Strike"), which was itself abated and never set for hearing. [Adv. Dkt. No. 293 at 3-4].

2. After substantial litigation, on February 4, 2016, this Court fully and finally resolved the Financing Issues by entry of an Agreed Final Judgment[3] [Adv. Dkt. No. 276], and the abatement was terminated. [Adv. Dkt. No. 293 at 4].

[2] The Order required that, until a determination of the Financing Issues, "further pleadings in this proceeding shall relate to the determination of the Financing Issues." [*See* Adv. Dkt. No. 57 at para. 1].

[3] The Agreed Final Judgment determined the nature of the interest that OHA purchased from ATP and is binding on the Intervenors. [Adv. Dkt. No. 276 at 6]. Under the Final Agreed Judgment, it was determined that OHA purchased a term overriding royalty interest also known as a production payment, which is by definition – and under the terms of the Final Agreed Judgment – an interest in liquid or gaseous hydrocarbons. [Dkt. No. 276 at 5]; 11 U.S.C. § 101(56A).

3. In conjunction with the resolution of the Financing Issues, OHA filed its *Amended Motion to Dismiss the Complaints in Intervention by the Statutory Lien Claims* [Dkt No. 274]. And, pursuant to a briefing schedule set by this Court [Adv. Dkt. No. 277] (and agreed to by the parties), OHA filed its *Second Amended Motion to Dismiss the Intervenor Complaints* [Adv. Dkt. No. 284] (collectively as amended, the "Motion to Dismiss"). The Motion to Dismiss asserted OHA's 12(b)(6) defense that OHA purchased hydrocarbons under 9:4869 in a "bona fide onerous transaction," and that OHA was not served with notice of any privileges prior to its payment of the purchase price. [Adv. Dkt. No. 284 at 17, 18].

4. On May 13, 2016, this Court entered its "Order Granting in part, Denying in part"[4] OHA's Motion to Dismiss and Motion to Withdraw Reference [Dkt. No. 294] (the "Original Order") and its Memorandum Opinion [Dkt. No. 293]. Pursuant to the Memorandum Opinion and the Original Order, this Court determined that under La. R.S. § 9:4869 OHA was a purchaser of an interest in hydrocarbons and if it "purchased an interest in hydrocarbons (or proceeds therefrom) without notice of the M&M Intervenors' privileges in a bona fide transaction, it would take the ORRIs free and clear of the M&M Intervenor's rights." [Dkt. No. 293 at 13]. Accordingly, the Intervenors were granted leave to file amended complaints to specifically plead whether OHA had notice of their alleged privileges at the time it paid the purchase price. [Dkt. No. 293 at 14-15], [Adv. Dkt. No. 294]. On this basis, the Court stated that the motion is "denied as to all issues other than the issue of whether OHA had notice" of the Intervenors' privileges and that the Court would "review the amended complaints" (to determine whether they sufficiently pleaded a claim) [Dkt. No. 294].

[4] *See* Docket Entry Description, [Dkt. No. 294].

5. On May 27, 2016, the Intervenors – mischaracterizing the Order and the Memorandum Opinion as the issuance of proposed findings of fact and conclusions of law to the District Court - filed their *Limited Joint Objection to the Report and Recommendation* [Dist. Dkt. No. 5] (the "Joint Objection")[5], which prompted the filing with this Court of OHA's *Emergency Motion for Order Clarifying that Report and Recommendation is Inapplicable to the Interlocutory Order on OHA's Motion to Dismiss, or Alternatively, for Leave to File Objection to Report and Recommendation Filed by OHA Investment Corporation* [Dkt. No. 306]. Without a hearing or further briefing, the Court entered its order confirming that "[t]he Report and Recommendation dealt solely with OHA's Motion for Withdrawal of Reference filed on February 5, 2016. The Order denying OHA's Motion to Dismiss and granting the M&M Intervenors' leave to amend their complaints is interlocutory." [Dkt. No. 307]. Further, the Court entered an order vacating the Original Order [Dkt. No. 309], as well as, an amended order stating that "[t]he intervenors are granted leave to amend, which has now occurred. This Order is interlocutory." [Dkt. No. 308] (the "Amended Order").

6. Prior to the entry of the Amended Order, on May 27, 2016, the Intervenors filed their amended complaints at Docket Nos. 298, 299, 300 and 303 (the "Amended Intervenor Complaints"). The Amended Intervenor Complaints make brand new allegations with respect to the issue of notice – although none of the Intervenors allege that they notified OHA of any claims of privilege prior to its purchase of the Term Overriding Royalties. Accordingly, on June 9, 2016, OHA filed its *Motion to Dismiss the Amended Complaints in Intervention Filed by the Statutory Lien Claimants* [Dkt. No. 310] (the "Supplemental Motion to Dismiss") with respect to

[5] The Intervenors also filed a notice of appeal of the Original Order. [Dkt. No. 301].

its safe harbor defense under section 9:4869 and more specifically with respect to the issue of notice.

## III. ARGUMENT AND AUTHORITIES

### A. The Intervenors' Procedural Objection Misrepresents the Court's Ruling on OHA's Motion to Dismiss and is Meritless.

7. The Intervenors' Response mischaracterizes this Court's orders. The Intervenors' allegations that OHA filed "four separate motions to dismiss" and that the Court previously considered and determined the issue of "notice" in connection with OHA's original motion to dismiss are patently false. Indeed, under the Original Order and Memorandum Opinion, the Court specifically left open the issue of whether the Intervenors could sufficiently plead a claim against OHA based on OHA's 12(b)(6) safe harbor defense under section 9:4869. [*See* Dkt No. 294] (explaining the Motion to Dismiss is "denied as to all issues other than the issue of whether OHA had notice" of the Intervenors' privileges and the Court would "review the amended complaints" once filed). The Memorandum Opinion determined that OHA was a purchaser of an interest in hydrocarbons under LOWLA and if OHA "purchased an interest in hydrocarbons (or proceeds therefrom) without notice of the M&M Intervenors' privileges in a bona fide transaction, it would take the ORRIs free and clear of the M&M Intervenor's rights." [Dkt. No. 293 at 13]. The Court did not determine whether the Intervenors sufficiently pleaded a claim against OHA under the notice provisions of section 9:4869. Indeed, the Intervenors did not plead "notice" in any respect. And, the Amended Intervenor Complaints include entirely new allegations regarding the issue of "notice" under section 9:4869. [*See e.g.*, Dkt. Nos. 298 at 5-6]. The Court simply has not determined whether these allegations are sufficient to state a claim against OHA under section 9:4869. Moreover, the Court did not determine the type of notice that is necessary in order to satisfy the statue. The Court merely observed that the Intervenors

argued that OHA had notice, but that the "Complaints in intervention do not specifically plead actual or constructive notice." [Memorandum Opinion at 14]. Accordingly, the Court allowed leave to amend "to address the issue of notice." [Memorandum Opinion at 14-15].

8. OHA's Supplemental Motion to Dismiss, which is limited to the issue of "notice," was filed in accordance with this Court's ruling on OHA's Motion to Dismiss and is completely dispositive of the Amended Intervenor Complaints. Accordingly, it must be considered.

9. OHA's Supplemental Motion to Dismiss is not procedurally improper because Rule 12(g)(2) only purports to limit successive motions to dismiss when a defense or objection could have been raised in an earlier motion, but was *omitted*. OHA did not fail to raise its section 9:4869 defense under Rule 12(b). In fact, it asserted this defense in its first live Phase II motion [Dkt. No. 274], which was appropriately amended pursuant to this Court's orders. [*See* Dkt. No. 277]. OHA could not have raised more specific "notice" arguments because there were no "notice" allegations in the Intervenor complaints to attack. The Court expressly reserved the question of whether the Intervenors could adequately plead notice based on their amended complaints.

10. Moreover, relying on practical considerations and the interplay between Rules 12(g)(2) and 12(h)(2)[6], many courts and commentators have completely rejected the applicability of Intervenors' Rule 12(g) argument in this context. For example, the Seventh Circuit held that "Rule 12(g)(2) does not prohibit a new Rule 12(b)(6) argument from being raised in a successive motion." *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir 2012). The court explained: "Rule

[6] Rule 12(h)(2) provides an exception to Rule 12(g)(2). Rule 12(g)(2) says that "[E]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Rule 12(h)(2) says that "[f]ailure to state a claim upon which relief can be granted . . . may be raised (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Fed. R. Civ. P. 12(h)(2).

12(h)(2) specifically excepts failure-to-state-a-claim defenses from the Rule 12(g) consolidation requirement. The policy behind Rule 12(g) is to prevent piecemeal litigation in which a defendant moves to dismiss on one ground, loses, then files a second motion on another ground." *Id*. (citing *Pilgrim Badge & Label Corp. v. Barrios*, 857 F.2d 1, 3 (1st Cir. 1988)). Unlike motions to dismiss for lack of personal jurisdiction or for improper service, that policy is absent in successive motions under Rule 12(b)(6) for failure to state a claim— because a defendant may still raise the issue in a motion for judgment on the pleadings or at trial. *See also Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.,* 771 F.3d 697, 701-04 (10th Cir. 2014) (declining to decide whether the district court's allowance of a subsequent Rule 12(b)(6) motion was erroneous "because any technical violation of Rule 12 did not affect the substantive rights of the parties"); *Walzer v. Muriel Siebert & Co*., 447 F. App'x 377, 379 (3d Cir. 2011) (same). A leading treatise notes that "little would be gained by preventing a defense under Rule 12(b)(6), . . . inasmuch as [it is] expressly preserved by Rule 12(h) and may be presented at a later time. Indeed, early determination of these matters is to be encouraged." 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1388 (3d ed. 2015). If the rule were otherwise, a party could simply raise the argument again in a motion for judgment on the pleadings, a motion for summary judgment, or at trial. That would be needlessly inefficient, costly and time consuming. [7]

11. Alternatively, to the extent the Court determines that the Intervenors' argument is applicable in this context and that OHA has asserted a "new" defense, the right to assert a 12(b)(6) defense is revived after an amendment to a complaint containing new matter; this is, "if the amended complaint . . .contains new matter, the defendant may bring a second motion under

[7] If the court determines OHA is entitled to the safe harbor then the issue is completely dispositive of the Intervenors' claims.

Rule 12[b] to object to the new allegations only." *Morrison v. Amway Corp. (In re Morrison)*, 421 B.R. 381, 385-86 (Bankr. S.D. Tex 2009) (Isgur. J.). Because the Amended Complaints contain new allegations relating to notice, OHA's right to file its 12(b)(6) motion was revived.

12. Further in the alternative (to the extent necessary), either (i) this Court impliedly or expressly authorized the Supplemental Motion to Dismiss based on its ruling; *see* Original Order, (explaining that the motion is "denied as to all issues other than the issue of whether OHA had notice" of the Intervenors' privileges and that the Court would "review the amended complaints" (to determine whether they sufficiently plead a claim); or (ii) the Intervenors waived any procedural impropriety based on their agreement to the briefing schedule in Dkt. No. 277.

B. **Under LOWLA, the method for delivery of notice to operators is the same as required for purchases of hydrocarbons**.

13. Although the notice described in Section 9:4868 must be delivered to operators, the statute clearly does not limit notice to operators. As the Court determined, privileges are extinguished as to production payments "if the transferee pays for them before he is notified of the privilege by the claimant." The only section of the statute that addresses the form and content of a statement of privilege is Section 9:4868. There is nothing to suggest that the method for delivery of a notice of privilege should be different as between an operator and a purchaser of hydrocarbons. In each instance, the claimant must notify the particular person of the alleged privilege. Because section 9:4868 specifically addresses when "a notice is delivered," it is only logical to apply the same standard of delivery with respect to purchasers of hydrocarbons.

14. Notably, section 9:4867 entitled "Notice to operator," addresses the fact that a privilege is extinguished if a statement of privilege is not delivered to the operator. Comparatively, section 9:4868 is not so limited. It addresses the form and content of a statement of privilege and when a notice is delivered. It is not limited to operators, and section 9:4869 –

which immediately follows – addresses notice to purchasers of hydrocarbons. Accordingly, it is appropriate to require the same method for delivery of notice to purchasers of production.

**C. Regardless, the Intervenors's Response Ignores the Statutory Language in 9:4869 "notified of the privilege by the claimant."**

15. With respect to the specific statutory notice language, the Intervenors neither dispute the authorities offered by OHA nor do they offer any conflicting authorities. Instead the Intervenors argue that the Court erred in connection with its Memorandum Opinion. In so doing, the Intervenors tacitly admit that the language contained in section 9:4869 contemplates actual notice of the alleged privilege directed to a purchaser by the claimant. *See* Supplemental Motion to Dismiss at 7-10. The Intervenors offer no alternative interpretation for the language "notified of the privilege by the claimant," and rather argue that the language is inapplicable to OHA. However, the Court has already (correctly) determined that the language is applicable and that OHA is a purchaser of an interest in hydrocarbons under section 9:4869.

16. The Intervenors argument regarding notice is that Section 4869 never mentions the words "affirmative", 'written", or "actual." [Response at 12]. But the Intervenors offer no explanation or authority on how "notified of the privilege by the claimant" is to be accomplished without some affirmative written notice by the claimant that results in actual notice.[8]

[8] *Compare, Wong v. East Baton Rouge Parish Sheriff's Office*, 522 So.2d 1134, 1139 (La. App. 1st Cir. 1988) (interpreting the statutory language "sheriff shall notify" - from La. R.S. 13:3886 - as requiring "the giving of actual notice"); 58 Am. Jur. 2d Notice § 4 (2016) (defining actual notice as "notice expressly and actually given"); Black's Law Dictionary 1227 (10th ed. 2014) (defining actual notice as "[n]otice given directly to, or received personally by, a party"). "Where a statute provides the manner, form, and time of notice, the notice must conform to the prescribed provisions." 58 Am. Jur. 2d Notice § 9 (2016). *Cf, Correct Craft IP Holdings, LLC v. Trick Towers, LLC*, 2013 U.S. Dist. LEXIS 164482 at *5, No. 6:13-cv-1052 (Md. Dist. FL Nov., 1, 2013) (interpreting language being "notified of the infringement" as requiring affirmative act by claimant that actually informs infringer); *Emcore Corp. v. Optium Corp.*, 2008 U.S. Dist. LEXIS 59794 at *27, No. 6-1202 (W.D. PA. Aug. 5, 2008) (same); *Lans v. Digital Equipment Corp.*, 252 F.3d 1320, 1327-28 (Fed. Cir. 2001) (same). "Where a statute requires notice to be given, but does not specify the type of notice, actual personal notice is required, and the notice must be personally served on the person to be notified." 58 Am Jur 2d, Notice § 9 (2016) (emphasis added).

17. Nor do the Intervenors seek to distinguish or offer contradictory authority to *Bank of Bernice v. D'Arbonne Lake Lodge, Inc*., 541 So.2d 354, 357-58 (La. App. 2d Cir. 1989) which held that general knowledge of ongoing work is insufficient to provide constructive notice of liens (even if constructive notice were permitted under LOWLA - which OHA denies). [S*ee* Motion to Dismiss at 11-12].

18. The Intervenors take dicta from the case of *Guichard Drilling Co. v. Alpine Energy Services*, 657 So. 2d 1307 (La. 1995) and argue that the Louisiana Supreme Court does not require lien claimants to give purchasers of interests in hydrocarbons notice of their lien. [Response at 7-8]. That misstates the facts and holding in *Guichard Drilling.* First, *Guichard Drilling* did not involve an attempt to enforce a statutory lien against a purchaser of non-cost bearing interests in hydrocarbons produced - or other facts similar to this case. Rather, it involved the enforcement of a statutory lien against the underlying leasehold held by the lessees and the issue of whether every interest owner in an underlying lease is an indispensable party to such an action on the lien. *Guichard Drilling*, 657 So. 2d at 1314-15. The Court emphasized the fact that the working interest owners contracted with the claimant for the drilling services. *Guichard Drilling*, 657 So. 2d at 1316. And, the court explained that the working interest owners "did in fact receive, through certified mail from Guichard, copies of the lien affidavit and notice of the suit filed in Plaquemines Parish to have the lien recognized." *Id*. Thus, the working interest owners received actual notice of the suit. *Id*. The Louisiana Supreme Court held that such actual written notice by the claimant was adequate and the other interest owners (and particularly the working interest owners who hired the claimant) did not need to be joined as necessary parties. *Id*. *Guichard Drilling* is not at odds with OHA and the Court's interpretation of the statute. The "lease owners" referenced in *Guichard* who bear the risk of the

contractor's insolvency are the lessees or working interest owners who engage the claimants – not purchasers of cost-free interests in hydrocarbons.[9] Purchasers of production payments (who are not in a position to pay contractors and who, like service providers, contribute capital to the drilling of wells) are protected by the safe harbor of section 9:4869.[10]

19. Notably, even parties who are not afforded statutory notice protections (like the protections afforded under section 9:4869 to purchasers of interests in production) are entitled to "adequate warning" of the existence of statutory privileges before their property may be subject to the liens. *See Supreme Contractors, Inc. v. Hallibuton Logging Services, Inc.*, 668 So.2d 1363, 1368 (La. App. 1st Cir. 1996). In *Supreme Contractors*, although the court held that a statutory lien "attaches to property (equipment described in the statute) moved onto the lease property after the privilege has been filed and recorded," adequate warning was required to be given to Halliburton in order for Halliburton's property to be subject to the lien. *See id* at 1368. The Court observed:

> In the instant case, Halliburton is an unknown person. Hallibuton's dealings in this matter were limited to contracting with Sea Hawk [the operator], long after Supreme Contractors' failure to be paid.
>
> . . .
>
> Halliburton was exclusively subject to the perils of another entity's lien without receiving any protection. The statute exposes a group of suppliers and laborers to a risk without providing any protection to them or their equipment. Therefore, we

[9] *See*, Guichard Drilling, 657 So. 2d at 1311-16. The Court stated:

> "It is clear the purpose of the Oil Well Lien Act is to protect those, like Guichard, who contribute labor, services, and equipment to the drilling of wells from the default **<u>of those who engage them</u>**. The legislature has clearly placed the risk of the contractor's insolvency or failure to pay on those with an interest in the lease. The legislature has made a policy decision that the **lease owners** are in a far better position to ensure payment for the subcontractor's services than is the subcontractor, and that **the onus should be on the <u>lease owners</u> to ensure that the <u>contractor it hires</u>** is solvent and that it actually makes the payment to the subcontractor."

*Guichard Drilling*, 657 So. 2d at 1312-13 (internal citations omitted) (emphasis added).

[10] OHA reserves all rights with respect to the Court's finding that statutory privileges may attach to non-cost bearing interests.

> conclude that the lack of notice provided to Halliburton is incompatible with the requirements of the Due Process Clause of the Fourteenth Amendment.

*Supreme Contractors,* 668 So.2d at 1368.

**D. The Intervenors' Effort to Revisit the Court's Ruling on the Motion to Dismiss is Based on Erroneous Arguments and Should be Denied (Again).**

20. The bulk of the Intervenors' Response is focused on revisiting the Court's ruling on OHA's Motion to Dismiss, and their arguments have already been overruled. Inasmuch as this issue has already been ruled on after extensive consideration and analysis by the Court, their arguments are not properly before the Court and a response is not required by OHA. Notwithstanding, OHA incorporates the arguments and authorities set forth in its Motion to Dismiss. [Dkt. No. 284].

21. Moreover, the nature of what OHA purchased from ATP has been fully and finally resolved before this Court, and an Agreed Final Judgment has been entered. [Dkt. No. 276]. In direct contradiction of the Agreed Final Judgment, Intervenors now argue that OHA did not *actually* purchase an interest in hydrocarbons,[11] when in fact, that has been resolved and is *res judicata*. The Final Agreed Judgment determined unequivocally that OHA purchased an interest in liquid or gaseous hydrocarbons. [Dkt. No. 276 at 5] ("The Term ORRIs constitute a 'production payment'. . ."); [Adv. Dkt. No. 276 at 3-4] (finding that OHA purchased "interests in hydrocarbons termed therein as 'term overriding royalty interests'"). A "term overriding royalty interest" also known as a production payment is by definition "an interest in liquid or gaseous hydrocarbons . . .". 11 U.S.C. § 101(56A). This is an issue that was extensively briefed prior to the entry of the Final Agreed Judgment. A production payment is a non-cost bearing interest in an oil and gas leasehold or mineral estate that "<u>is a share of the oil produced</u> from described

[11] Joint Objection at 6.

premises, free of the costs of production at the surface, terminating when a given volume of production has been paid over or when a specified sum from the sale of such oil had been realized." 2 PATRICK H. MARTIN & BRUCE M. KRAMER, WILLIAMS & MEYERS OIL AND GAS LAW § 422.2 at 366.10 - 366.12 (2012) (emphasis added). The Court correctly determined that OHA purchased a share of hydrocarbons, and this issue was determined in connection with the Final Agreed Judgment, which is binding on the Intervenors and no longer subject to appeal.

22. Under LOWLA, hydrocarbons are defined as "oil and gas occurring naturally in the earth and any other valuable liquid or gaseous substance found and produced in association with them." La. R.S. § 9:4861(2). The Intervenors make much of the fact that hydrocarbons become movables once they are severed from the ground. This is immaterial. The Intervenors ignore the statutory definition of "hydrocarbons," which includes hydrocarbons produced and to be produced. They also ignore the fact that it has already been determined that OHA purchased and owned an interest in the severed hydrocarbons as produced; accordingly, OHA's purchase is covered by section 9:4869(A)(1)(a). Further, the nature of a production payment is that it is an immovable property interest for purposes of the conveyance, and a movable property interest as it relates to the production and the proceeds payable to the holder.[12]

**(ii) Bona Fide Onerous Transaction**

23. The Intervenors' "bona fide purchaser" argument is also misplaced. First, there is no requirement under section 9:4869 that a purchaser of an interest in hydrocarbons be a "bona

[12] Section 9;4869 includes the sale of production payments, which by nature are sales of an immovable interest, as well as, an interest in movable property. The relationship of certain provisions in the statute emphasizes the broad definition of "hydrocarbons." Notably, section 9:4866 which solely relates to the extinction of privileges as to movables excludes "hydrocarbons, the obligations and proceeds derived from the disposition of hydrocarbons;" and, the extinction of privileges as to hydrocarbons are addressed under a separate section - 9:4869. That is to say, the structure of the statute (in addition to the definitions) supports the fact that "hydrocarbons" are not strictly treated as movables as the Intervenors allege.

fide purchaser."[13] Rather, it requires "a bona fide onerous transaction" and the transferee must pay for its interest in the hydrocarbons "before he is notified of the privilege by the claimant." La. R.S. § 9:4869(A)(1)(a). The Intervenors are plainly conflating the issue of "notice" with whether there was a "bona fide onerous transaction."

24. There is no dispute that OHA paid $65 million for its interest in the hydrocarbons in a bona fide onerous transaction. Indeed, that was also determined in connection with the Agreed Final Judgment. [Dkt. No. 276 at 3-4] ("On or about June 20, 2011 and pursuant to that certain (i) *Purchase and Sale Agreement,* dated June 20, 2011 . . ."). To extent that the Intervenors contended that there was not an arms length, bona fide transaction between OHA and the seller, that issue should have been raised in connection with the Agreed Final Judgment. It is *res judicata*.

25. The Intervenors' argument that under LOWLA, the purchaser of a production payment should be subject to a higher due diligence standard than the standard provided under section 9:4869 is wrong. The statute provides that the privilege attaches to "proceeds received by, and the obligations owed to, a lessee from the disposition of hydrocarbons subject to the privilege." La. R.S. § 9:4863(A)(4). The safe harbor provision contemplates that the purchaser of the interest in hydrocarbons pays the purchase price in a bona fide transaction. *See* La. R.S. § 9:4869(A)(1)(a). Hence, the purchase price is available to pay the cost of operations. It is common for lessees to sell cost-free interests in hydrocarbons (and particularly production payments) as a mechanism to finance the development of the underlying lease (i.e. to pay drilling costs). 2 PATRICK H. MARTIN & BRUCE M. KRAMER, WILLIAMS & MEYERS OIL AND GAS LAW § 422 at 370 (2012) (noting "the owner of a working interest may use oil

[13] However, if such a requirement existed, OHA would qualify as a bona fide purchaser.

payments [a/k/a production payments] to finance his operations, by assignment of the oil payment to a supply company, a drilling contractor, or to raise money for drilling."). This practice has been ongoing in the industry many years. *See, e.g. Pansy Oil Co. v. Federal Oil Co*., 91 S.W.2d 453 (Tex. Civ. App. 1936, *error ref'd*) (discussing sale of production payment to finance drilling activities). The statute does not require further due diligence by purchasers of production payments to identify the status of trade payables, and there is no adequate due diligence mechanism that would detect whether a vendor is not going to be paid by the operator in the future or whether the unpaid vendor is going to take actions under the statute to perfect a privilege on account of unpaid work.

## IV. CONCLUSION

Accordingly, the Amended Intervenor Complaints should be dismissed

Dated: July 8, 2016.

Respectfully submitted,

**THOMPSON & KNIGHT LLP**

By: */s/ Tye Hancock*

Tye C. Hancock
Bar No. 24032271
Mitchell E. Ayer
Bar No. 01465500
333 Clay Street, Suite 3300
Houston, Texas 77002
Telephone: (713) 654-8111
Facsimile: (713) 654-1871

David M. Bennett
Bar No. 2139600
Katharine Battaia Clark
Bar No. 24046712
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: (214) 969-1700
Facsimile: (214) 969-1751

**ATTORNEYS FOR OHA INVESTMENT CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on those parties entitled to notice via this Court's ECF system and upon the parties on the attached service list by regular US mail on this 8th day of July, 2016.

/s/*Tye C. Hancock*
Tye C. Hancock

## SERVICE LIST

Bennu Oil & Gas, LLC
1330 Post Oak Blvd. Ste. 1600
Houston, TX 77056-3072

**DEFENDANT**

Andrew J. Gallo
MORGAN, LEWIS & BOCKIUS LLP
One Federal St
Boston, MA 02110
andrew.gallo@morganlewis.com

Sean B. Davis
WINSTEAD PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, TX 77002
sbdavis@winstead.com

Phillip L Lamberson
WINSTEAD PC
500 Winstead Building
2728 N. Harwood Street
Dallas, TX 75201
plamberson@winstead.com

**ATTORNEYS FOR BENNU OIL & GAS, LLC**

Rodney D. Tow
TOW AND KOENIG PLLC
26219 Oak Ridge Drive
The Woodlands, TX 77380
rtow@towkoenig.com

**TRUSTEE**

Charles M. Rubio
DIAMOND MCCARTHY, LLP
909 Fannin Street, Suite 1500
Houston, TX 77010
crubio@diamondmccarthy.com

**COUNSEL FOR TRUSTEE IN MAIN BANKRUPTCY**

Chris Lindstrom
COOPER & SCULLY, P.C.
815 Walker Street, Suite 1040
Houston, Texas 77002
Chris.Lindstrom@cooperscully.com

Timothy Micah Dortch
COOPER & SCULLY, P.C.
900 Jackson Street, Suite 100
Dallas, TX 75202
Micah.Dortch@cooperscully.com

**ATTORNEY IN CHARGE FOR RODNEY TOW, TRUSTEE**

Robin B. Cheatham
ADAMS AND REESE LLP
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139-4500
robin.cheatham@arlaw.com

**ATTORNEYS FOR HARVEY GULF INTERNATIONAL MARINE, LLC, HORNBECK OFFSHORE SERVICES, L.L.C., EXPEDITORS & PRODUCTION SERVICES, INC., EPS CARGO HANDLERS COMPANY, AND EPS LOGISTICS COMPANY**

Paul M Davis
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, TX 77002
pauldavis@andrewskurth.com

John J. Sparacino
VORYS, SATER, SEYMOUR & PEASE LLP
700 Louisiana Street, Suite 4100
Houston, Texas 77002
jjsparacino@vorys.com

**ATTORNEYS FOR THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.**

Brian D. Wallace
Allen C. Miller
Evan Dicharry
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
brian.wallace@phelps.com
allen.miller@phelps.com
evan.dicharry@phelps.com

**ATTORNEYS FOR CREDITORS, GULF OFFSHORE LOGISTICS, L.L.C., MARTIN HOLDINGS, L.L.C., C-PORT/STONE L.L.C., OFFSHORE SERVICE VESSELS, L.L.C. AND BARRY GRAHAM OIL SERVICE, L.L.C.**

Phil F. Snow
Kenneth Green
Ross Spence
SNOW FOGEL SPENCE LLP
2929 Allen Parkway, Suite 4100
Houston, TX 77019
philsnow@snowfogel.com
kennethgreen@snowfogel.com
rossspence@snowfogel.com

**ATTORNEYS FOR SCHLUMBERGER TECHNOLOGY CORPORATION, M-I L.L.C. D/B/A M-I SWACO, SMITH INTERNATIONAL, INC., WIRELINE CONTROL SERVICES, LLC, NABORS OFFSHORE CORPORATION, CANRIG DRILLING TECHNOLOGY, LTD., AND SUPREME SERVICE & SPECIALTY CO. INC.**

Michael D. Rubenstein
LISKOW & LEWIS
1001 Fannin Street, Ste. 1800
Houston, Texas 77002
mdrubenstein@liskow.com

**ATTORNEYS FOR CHAMPION TECHNOLOGIES, INC. AND OFFSHORE ENERGY SERVICES INC.**

Stewart F. Peck
Christopher T. Caplinger
Benjamin W. Kadden
LUGENBUHL, WHEATON, PECK, RANKIN 601
Poydras Street, Suite 2775
New Orleans, LA 70130
speck@lawla.com
ccaplinger@lawla.com
bkadden@lawla.com

**ATTORNEYS FOR WARRIOR ENERGY SERVICES CORPORATION, FASTORQ, L.L.C., STABIL DRILL SPECIALTIES, L.L.C., WORKSTRINGS INTERNATIONAL, L.L.C., AND SUPERIOR ENERGY SERVICES, L.L.C.**

J. Christopher Kohn
Kathie Shahan
Victor W. Zhao
Commercial Litigation Branch
United States Department of Justice
P.O. Box 875
Ben Franklin Station
Washington D.C. 20044
victor.w.zhao@usdoj.gov

**COUNSEL FOR THE U.S. DEPT. OF JUSTICE**