## UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF TEXAS (HOUSTON)

| | | |
|---|---|---|
| **OHA INVESTMENT CORPORATION,** | * | **CASE NO. 4:16-CV-02556** |
| | * | |
| | * | |
| **v.** | * | **JUDGE GRAY H. MILLER** |
| | * | |
| | * | |
| **BENNU OIL & GAS, LLC** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### M&M INTERVENORS' LIMITED OBJECTION TO
### JUDGE ISGUR'S REPORT AND RECOMMENDATION

**MAY IT PLEASE THE COURT:**

Schlumberger Technology Corporation; Wireline Control Services, LLC; Smith International, Inc.; M-I L.L.C. d/b/a M-I SWACO; Canrig Drilling Technology, Ltd.; Champion Technologies, Inc.; Offshore Energy Services, Inc.; Stabil Drill Specialties, L.L.C.; Fastorq, L.L.C.; Workstrings International, L.L.C.; Superior Energy Services, L.L.C., d/b/a Superior Completion Services; Warrior Energy Services Corporation; Harvey Gulf International Marine, Inc.; Hornbeck Offshore Services, LLC; (collectively, the "M&M Intervenors") hereby submit the following Limited Objection to the Bankruptcy Court's August 19, 2016 *Report and Recommendation* [Adv. Doc. No. 326] entered in Adversary No. 12-03443 (the "Adversary Proceeding").

### BACKGROUND AND PROCEDURAL HISTORY

1.      The pertinent facts of this case are more completely set forth in the *Joint Response of Statutory Lienholder Intervenors to OHA Investment Corporation's Motion to Dismiss M&M Intervenors' Complaints Pursuant to Fed. R. Civ. P. 12(b)(6)* (the "First Response") [Adv. Doc. 285], a copy of which is attached hereto and incorporated herein as

**Exhibit A**.  Essentially, this case involves a dispute between the M&M Intervenors, a group of statutory lienholders, and OHA, an entity that acquired certain term overriding royalty interests ("ORRIs") from ATP Oil & Gas Corp. ("ATP") after the M&M Intervenors' liens had attached to ATP's working interest that OHA's ORRI was carved out of under applicable Louisiana law. This dispute principally relates to whether OHA purchased the ORRIs subject to the M&M Intervenors' statutory liens and privileges that have inception dates prior to the date of OHA's acquisition of the ORRIs.  The M&M Intervenors maintain that OHA purchased the ORRIs subject to their liens, while OHA contends that it acquired the ORRIs free and clear of the M&M Intervenors' liens and privileges.

2.      The subject Adversary Proceeding was initiated by OHA, but each of the M&M Intervenors subsequently filed complaints in intervention seeking a declaratory judgment on the above-referenced issue and disgorgement of any royalty payments received by OHA as being subject to Intervenors' liens and privileges.  OHA then moved to dismiss the complaints in intervention per Fed. R. Civ. P. 12(b)(6), which was then amended twice [Adv. Doc. Nos. 274 and 284] (collectively, the "Motion to Dismiss").

3.      The M&M Intervenors filed their First Reponses to the Motion to Dismiss. The Bankruptcy Court heard oral argument on the Motion to Dismiss, and issued an opinion on May 13, 2016 [Doc. 293] ("May Memorandum Opinion").  Contemporaneously with the entry of the May Memorandum Opinion, the Bankruptcy Court also issued an Order [Adv. Doc. No. 294], which held that "[p]ursuant to the [opinion] issued on this date, OHA's [Motion to Dismiss] is denied as to all issues other than the issue of whether OHA had notice of the M&M Intervenor's LOWLA rights."  In that same Order, the Bankruptcy Court granted the M&M Intervenors leave to amend their respective complaints in intervention. In order to preserve their rights with regard

to the Bankruptcy Court's recommendations in the May Memorandum Opinion, the M&M Intervenors filed a Limited Objection to the May Memorandum Opinion [Dist. Court Case 4:16-CV-01378; Doc.5].

4.      After the M&M Intervenors filed their Amended Complaints [Adv. Doc. Nos. 298, 299, 300, 303], OHA's filed a subsequent (its fourth) motion to dismiss ("Fourth Motion to Dismiss"). [Adv. Doc. No. 310]. OHA's Fourth Motion to Dismiss asserted that OHA acquired its ORRI free and clear of the M&M Intervenors' liens unless the M&M Intervenors provided actual notice of their liens to OHA prior to the assignment of the ORRI to OHA. However, this argument is based on the improper premise that OHA was entitled to additional protection under the so-called "safe harbor" provision under Louisiana Oil Well Lien Act (commonly referred to as "LOWLA") for purchasers of oil and gas hydrocarbons.

5.      The M&M Intervenors filed their response to the Fourth Motion to Dismiss ("Response") [Adv. Doc. No. 316] a copy of which is attached hereto and incorporated herein as **Exhibit B**. The M&M Intervenors contend that OHA was not a purchaser of oil and gas hydrocarbons and thus acquired its ORRI subject to the M&M Intervenors' liens that existed at the time of the ORRI assignment liens regardless of whether OHA had been served with actual notice of the liens by the lien creditors.

6.      On August 19, 2016, the Bankruptcy Court issued its Report and Recommendation on the Fourth Motion to Dismiss ("August Report and Recommendation") and Order [Adv. Doc. Nos. 325 & 326] (collectively, the August Report and Recommendation and the May Memorandum Opinion, are referred to herein as the "R&R").

## WITHDRAWAL OF THE REFERENCE

7. The reference was withdrawn on July 14, 2016 [Adv. Doc. 318].

## SUMMARY OF OBJECTION

8.      The M&M Intervenors believe that the Bankruptcy Court properly concluded that M&M privileges under LOWLA are established and effective as to third persons when the contractor begins rendering services at the well site. Likewise, the M&M Intervenors agree that the Bankruptcy Court properly concluded that to the extent the M&M Intervenor' privileges attached and became effective on a date prior to the conveyance of OHA's ORRIs, then the privilege attached to the entirety of ATP's operating interest, and any subsequent assignment of an ORRI out of that operating interest would be subject to the M&M privileges that had already been established.

9.      The M&M Intervenors however object to the Bankruptcy Court's finding that to the extent that an ORRI purchaser did not have actual notice of an M&M privilege prior to the ORRI assignment, even if that lien was established and effective as to the operating interest prior to the ORRI assignment, that an ORRI assignee could purchase its ORRI free and clear of those M&M privileges. Specifically, the M&M Intervenors object to the R&R to the extent it improperly concludes that OHA (as the purchaser of the ORRIs) is entitled to the statutory safe harbor protections in La. R.S. § 9:4869 existing in favor of good faith third party purchasers *of hydrocarbons*. The M&M Intervenors submit that the Bankruptcy Court's decision on that issue was in error and file this objection to preserve their right to challenge same. In summary, the Bankruptcy Court's finding in the R&R that OHA was a "purchaser of hydrocarbons" and therefore entitled to notice under § 4869 was in error.

## ARGUMENT

**Objection No. 1: The Bankruptcy Court issued an incorrect recommendation with respect to its interpretation of Section 9:4869 by conflating the important distinction between the purchaser of an interest "in" hydrocarbons (in this case the right to**

**receive a percentage of the proceeds received by ATP from future sales of hydrocarbons) versus a purchaser "of" hydrocarbons.**

10.    The Bankruptcy Court incorrectly determined that a purchaser of an interest "in" future sales of hydrocarbons is the same as purchaser "of" hydrocarbons. In the May Memorandum Opinion the Court found:

> By contrast, "[a]n overriding royalty is a ***fractional interest in the gross production*** of oil and gas under a lease, in addition to the usual royalties paid to the lessor, free of any expense for exploration, drilling, development, operating, marketing and other costs incident to the production and sale of oil and gas produced from the lease." It is an interest carved out of the working interest, as distinguished from the owner's reserved royalty interest. (Internal citations omitted) (emphasis added).

11.    In the May Memorandum Opinion, the Bankruptcy Court went on to state that "if OHA purchased an interest in hydrocarbons (or proceeds therefrom) without notice of the M&M Intervenors' privileges in a bona fide transaction, it would take the ORRIs free and clear of the M&M Intervenors' rights." [Adv. Doc. 293 at page 13]. The Bankruptcy Court then carried forward its erroneous construction of Section 9:4869 in its August Report and Recommendation stating that "a purchaser of an ORRI was a ***purchaser of hydrocarbons*** for the purpose of LOWLA." [Adv. Doc. 326 at page 10]. In one instance the Court found that an ORRI is an "interest in gross production" and in another that OHA was "a purchaser of hydrocarbons". There is an important difference between the purchase of an "interest in the gross production" and a "purchaser of hydrocarbons."

12.    Additionally, under the Bankruptcy Court's interpretation that OHA was both a purchaser of an interest in the gross production and a purchaser of hydrocarbons for purposes of 9:4869, it could likewise be argued that a purchaser of an operating interest or working interest would also be entitled to the protections of 9:4869. A privilege under LOWLA attaches to "proceeds received by, and the obligations owed to, a lessee from the disposition of hydrocarbons subject to the privilege." L.A. RS 9:483. LOWLA makes it clear that generally a

lessee is entitled to proceeds from the disposition of hydrocarbons. Under the Bankruptcy Court's erroneous conclusion that a party that purchases an interest in production or an interest in proceeds from production is the same thing as purchasing hydrocarbons, then a lessee (or an assignee of a working interests from a lessee) who purchases an interest in production could also considered a purchaser of hydrocarbons and entitled to the protection under LA R.S. 9:4869. Under the Bankruptcy Court's finding that a party who purchases an interest in the proceeds of hydrocarbons is the same as a party that actually purchases hydrocarbons, an assignee of a working interest could argue that as long as it did not receive notice of a lien claim prior to purchasing its working interest (even if liens have already attached to such interest), all liens would cease to exist.

13.     This cannot be the case for two reasons as further explained below: (1) under Louisiana law, one cannot own hydrocarbons before they are severed and (2) such an interpretation would render the protections for lien creditors provided under LOWLA meaningless.

**Objection No. 2: The Bankruptcy Court issued recommendations which are internally inconsistent regarding the ability to own and purchase hydrocarbons in the ground under Louisiana law.**

14.     The Bankruptcy Court recommended that this Court adopt inconsistent interpretations regarding the ownership of hydrocarbons under Louisiana law. On one hand, the Bankruptcy Court recognized that under Louisiana law, one cannot own hydrocarbons in the ground, and on the other hand found that OHA was a purchaser of hydrocarbons, while those hydrocarbons were still in the ground.

15.   As the Bankruptcy Court recognized in its May Memorandum Opinion

> "…it is well settled jurisprudence of [Louisiana] that oil and gas in place
> are not subject to absolute ownership as specific things apart from the soil
> of which they form part; and a grant or reservation of such oil and gas
> carries only the right to extract such minerals from the soil." *Frost-
> Johnson Lumber Co. v. Sallings' Heirs*, 91 So. 207, 207 (La. 1920)

*See* May Memorandum Opinion, page 11. Thus, in Louisiana one cannot own hydrocarbons until

they are severed from the ground.  A working interest owner has the right to extract minerals

from the ground but does not, however, own the hydrocarbons until they are severed.

16.   Louisiana enacted LOWLA which sets forth the applicable law governing liens on

oil and gas properties. La. Rev. Stat. 9:4861 *et seq.* In Louisiana, liens are referred to as

"privileges." LOWLA provides that the oil and gas privilege "**is established and is effective as**

**to a third person** when (1) [t]he claimant, who is a contractor, laborer, or employee **begins**

**rendering services** at the well site [or] (2) [m]ovables sold by the claimant to an operator or

contractor are delivered to the well site. . . ."  La. Rev. Stat. 9:4864(A) (emphasis added); *see*

*Murray v. A&T Well Serv.* (*In re Leeward Operators, LLC*), 2012 Bankr. LEXIS 1215 at *8

(Bankr. W.D. La. Mar. 21, 2012) ("A Louisiana oil and gas privilege outranks any mortgages or

other privileges that become effective against third parties after the oil and gas privilege is

established.")  "[E]ven prior to the recordation of a notice [statement] of privilege, the lien is

effective as to third persons [i.e., those not contractually bound to the claimant] as of the date of

such first provision of services, equipment or other operations."  Patricia H. Chicoine, Lien on

LOWLA; It's a Privilege: Recent Revisions to the Louisiana Oil Well Lien Act, 57 La. L. Rev.

1133, 1150 (1997) (citing La. Rev. Stat. 9:4864(A)).

17.   The Bankruptcy Court properly held that the M&M Intervenors' liens claims were

established and effective as to third parties such as OHA as of the date the M&M Intervenors

began providing services to the lease ("lien inception date") and that an assignment of an ORRI after the lien inception date was subject to the M&M Intervenors' liens.  In this case, the M&M Intervenors' have each demonstrated that they began providing services prior to the conveyance and recording of the ORRI to OHA.  *See* May Memorandum Opinion, pages 2-3.

18.     The Bankruptcy Court, however, wrongfully determined that OHA was entitled to protection under the so called "safe harbor" provision of LOWLA.  La. R.S. § 9:4869.  La. R.S. §9:4869 entitled "Purchaser of hydrocarbons; effect of privilege and notices required" provides in relevant part:

> A.  The privilege established by R.S. 9:4863(A)(3) and (4) over hydrocarbons, the amount due for their price, and their proceeds is extinguished or becomes ineffective as to a third person in the manner provided in R.S. 9:4864, 4865, and 4867, and also in the following ways:
>
> (1)(a)  The privilege is extinguished as to hydrocarbons that are sold or otherwise transferred in a bona fide onerous transaction by the lessee or other person who severed or owned them at severance if the transferee pays for them before he is notified of the privilege by the claimant.

Accordingly, § 4869 clearly states that it applies only to purchasers *of hydrocarbons*, who participated in a bona fide transaction, and who are third parties to the interest owner(s). Because OHA is not a bona fide third-party purchaser of hydrocarbons, § 4869 is not applicable.

19.     First, despite the Bankruptcy Court's conclusion to the contrary, OHA is not a purchaser of hydrocarbons, but rather was a purchaser of the ORRI. A basic principal of property law is that an owner cannot convey more than he owns. *Extraction Res., Inc. v. Freeman*, 555 S.W.2d 156, 159 (Tex. Civ. App.—El Paso 1977, writ ref'd n.r.e.). Likewise, a working interest owner cannot convey more than it owns, and any conveyance is subject to all liens and encumbrances existing at the time of the conveyance. *Murray v. A&T Well Serv.* (*In re Leeward Operators, LLC*), 2012 Bankr. LEXIS 1215 at *8 (Bankr. W.D. La. Mar. 21, 2012) ("A

Louisiana oil and gas privilege outranks any mortgages or other privileges that become effective against third parties after the oil and gas privilege is established.").

20.    A typical third party purchaser of extracted oil and/or gas purchases a set amount of oil or gas on a monthly (or other recurring) basis for a price set by contract upon the extraction of such hydrocarbons from the property.  The purpose of the safe harbor protections afforded to bona fide purchasers of hydrocarbons under § 9:4869 is two-fold: (i) to shift to the lien claimant the burden of providing notice to the third party purchasers or risk losing such lien and privilege over the extracted hydrocarbons and the associated proceeds remitted by the hydrocarbon purchases prior to receipt of notice (§ 9:4869(A)); and (ii) to allow such purchasers to suspend future payments once the purchaser has notice of a lien and avoid double-liability to the lien claimant(s) and hydrocarbon seller(s) (§ 9:4869(B)). These stated purposes are not applicable to parties acquiring ORRIs as investment vehicles, like OHA.

21.    As stated *supra*, ATP, as the working interest owner under Louisiana law, could not own hydrocarbons in the ground prior to the severance. Therefore, ATP could not sell, and OHA could not purchase, hydrocarbons while those hydrocarbons remained in the ground. What OHA purchased (the ORRI) was interest in the proceeds from any future sale of the hydrocarbons from the subject properties to a third-party once those hydrocarbons were severed from the ground.

22.    The Bankruptcy Court's May Memorandum Opinion and the August Report and Recommendation are internally inconsistent in that the court on one hand recognizes that hydrocarbons cannot be owned while they are in the ground and yet on the other hand finds that OHA could be a purchaser of hydrocarbons while still in the ground.

23.     Hydrocarbons and royalty interests are not one in the same.  A hydrocarbon is a movable severed from the ground, while a royalty interest (such as the ORRIs acquired by OHA) is a real right and immovable property under applicable Louisiana law.[1]

24.     As set forth in the First Response to the Motion to Dismiss and the Response to the Fourth Motion to Dismiss, under the terms of the Original Conveyance by which OHA acquired the ORRIs,[2] OHA is entitled to a percentage of the proceeds received from a purchaser of the hydrocarbons, should they be successfully severed and later sold to a third party purchaser. The conveyance documents specifically state that the grantor (ATP) retained the right to **keep and to sell the hydrocarbons**, confirming that no hydrocarbons were ever sold to OHA.[3]

25.     At the time OHA acquired its ORRI, OHA could not have purchased hydrocarbons, as such hydrocarbons were not yet "born" in that they had not yet been severed from the properties.[4]  Rather, OHA acquired a derivative mineral interest from ATP, which entitled it to receive payment of a portion of the proceeds associated with the future sale of any hydrocarbons extracted and severed from the mineral estate by ATP (subject to existing burdens such as the M&M Intervenors' statutory privileges).  This is an important distinction with a real difference for purposes of determining the applicability of the safe harbor protections afforded to bona fide purchasers of hydrocarbons under § 4869.

26.     Since OHA could not and did not purchase hydrocarbons when it purchased the ORRI, it is not entitled to the benefit of the "safe harbor" provision of La. R.S. § 9:4869, and

---

[1] *See Union Oil & Gas Co. v. Broussard*, 237 La. 660, 710 (La. 1959) ("a mineral royalty interest . . . is a species of real right which entitles the owner to participate in production when and if production is obtained").
[2] *See* **Exhibit A**, at para. 62;  **Exhibit B**, page 10.
[3] *Id*.
[4] The Bankruptcy Court recognized this fundamental principle of law.  *See May Report and Recommendation* at page 11 (holding "it is well settled jurisprudence of [Louisiana] that oil and gas in place are not subject to absolute ownership as specific things apart from the soil of which they form part; and a grant or reservation of such oil and gas carries only the right to extract such minerals from the soil").  Yet having recognized this principle, the Bankruptcy Court contradicted its own reasoning when it found that OHA purchased hydrocarbons.

rather remains subject to the general LOWLA principal that the oil and gas privilege is effective against third parties when the lien claimant begins rendering services at the well site. La. Rev. Stat. 9:4864(A).

27.     Additionally, under 9:4869(a)(1)(A), "the privilege is extinguished as to the hydrocarbons that are sold . . . by the lessee or other person *who owned them at severance* if the transferee pays for them before he is notified of the privilege by the claimant." The "safe harbor" statute specifically contemplates that it applies to party who purchased the hydrocarbons from a party that owned them at severance. Under the Court's finding that OHA could be a purchaser of hydrocarbons before they were severed, OHA would also have been the owner at severance. As the owner of hydrocarbons, OHA could therefore not also be the transferee of the hydrocarbons after they are severed. One cannot be both a transferor and a transferee in the same transaction.

**Objection 3: Bankruptcy Court's finding denies lien creditor rights afforded by LOWLA's well-established lien inception date and relation-back provisions.**

28.     As stated above, and as recognized by the Bankruptcy Court, an oil and gas privilege is established and effective as to third parties when the lien contractor begins provides services or materials to the well site. La. Rev. Stat. 9:4864(A). *See* May Memorandum Opinion at page 10. LOWLA aims to protect contractors and subcontractors from the default of those who engage them. The "purpose of [LOWLA] is to protect those, [] who contribute labor, services, and equipment to the drilling wells from the default of those who engage them." *Guichard Drilling Co. v. Alpine Energy Servs., Inc.,* 657 So. 2d 1307, 1312 (La. 1995); *JHJ, Ltd. I v. Chevron U.S.A., Inc.*, 617 F. Supp. 729, 733 (M.D. La. 1985); *Lor, Inc. v. Martin Exploration Co.*, 489 So. 2d 1326 (La. Ct. App. 1986); *See Cutting Underwater Techs. USA, Inc. v. Con-Dive, LLC,* No. 09-387, 2011 U.S. Dist. LEXIS 29325, *18-20 (E.D. La. Mar. 22, 2011)

("Under LOWLA, a subcontractor may assert a lien over the property of an operator or lessee in order to secure 'the price of his contract for operations.'  By making available this privilege, the statute aims to 'protect [subcontractors] from the default of those who engage them.' As the Louisiana Supreme Court has observed, the statute reflects the 'policy decision that the lease owners are in a far better position to ensure payment for the subcontractor's services than is the subcontractor, and that the onus should be on the lease owners to ensure that the contractor it hires is solvent and that it actually makes payment to the subcontractor. The statute 'clearly place[s] the risk of the contractor's insolvency or failure to pay on those with an interest in the lease.'") (quoting *Guichard Drilling,* 657 So. 2d at 1312.).

29.    Courts should interpret LOWLA in a manner which will effectuate its purposes, and the courts should not erect artificial barriers to its enforcement. *Id.* at *36; *Guichard Drilling Co.*, 657 So. 2d at 1313; *see also Phillips Petroleum Co. v. Best Oilfield Servs., Inc.*, 48 F.3d. 913, 916 (5th Cir. 1995) (noting that a "reasonable construction" must be considered before adopting a strict construction).  Courts should not construe the lien statutes so as to defeat the purpose of the statutes. *Guichard Drilling Co.*, 657 So. 2d at 1313.

30.    The Bankruptcy Courts recommendation to this Court that LOWLA should be interpreted to find than an operating interest owner can eliminate contractors' lien rights simply by transferring or carving out portions of its operating interest after entering into agreements with contractors to provide materials and services and receiving the benefit of those services undermines the clear purpose of LOWLA and in fact erects an artificial barrier to enforcement of the M&M Intervenors' liens – which is exactly what Louisiana courts have directed <u>not</u> occur. The Bankruptcy Court's recommendation that an ORRI holder is entitled to invoke the "safe harbor" provisions intended for purchasers of hydrocarbons means that ATP could carve out an

overriding royalty equal to ATP's entire working interest share of revenues for the benefit of a third party, OHA, and leave M&M Intervenors with nothing but a meaningless lien against an operating interest that no longer has any right to any proceeds from the sale of hydrocarbons. This approach was squarely rejected by the Fifth Circuit in an analogous case which involved the Texas mineral lien statute which – like LOWLA – provides for a lien inception date upon commencement of work and relation-back to such date provided the lien is timely recorded in accordance with the statutory requirements. *See Acme Energy Servs., Inc. v. Heritage Consol., LLC* (*In re Heritage Consol., LLC*), 765 F.3d 507 (5th Cir. 2014) (recognizing that if this were the law then every operator would simply assign all of the right to receive revenues to related parties through ORRIs carved out of the working interest, and those overrides would suddenly become lien-free).

31.     Further, as between a mineral contractor and a purchaser of an ORRI, the ORRI purchaser is in a much better position to become informed about the potential for liens on property before purchasing interests in future revenues from the operator and lessee ATP.

32.     OHA purchased the ORRIs for approximately $65 million dollars.   In this situation, OHA had the opportunity to, and upon information and belief, actually did conduct due diligence before purchasing the ORRIs, and could have, and upon information and belief as asserted in M&M Intervenors' Amended Complaints, did have notice that mineral contractors including the M&M Intervenors were providing materials and services on the leases, which were secured by statutory privileges.

33.     On the other hand, the M&M Intervenors, while providing services to the lease would not have had any way of knowing that ATP intended to carve out and sell an ORRI on the property after the M&M Intervenors' liens had already attached to the property and would be

unable to continually conduct any sort of diligence to determine this.  In fact, the M&M Intervenors did all that was required of them statutorily to protect themselves and to protect their liens under LOWLA. "Minimal procedures are set out in [LOWLA] for preservation and enforcement of the privilege." *Guichard Drilling Co.*, 657 So. 2d at 1313. The M&M Intervenors filed timely liens, which pursuant to the LOWLA gives them a lien which relates back to the date the services were first performed.  To hold that in order for an M&M lien creditor to protect itself, it had to take steps not required by LOWLA, would frustrate the expressed purposes of LOWLA and render the protections of LOWLA for M&M lien creditors meaningless.

## <u>CONCLUSION</u>

The Bankruptcy Court incorrectly concluded that La. R.S. § 9:4869 applies in this case. Because § 4869 applies only to a bona fide third-party "purchaser of hydrocarbons" and not to purchasers of royalty interests, including ORRIs, it is not applicable here.  OHA is not a bona fide third-party purchaser of hydrocarbons and cannot invoke § 4869 to attempt to extinguish the M&M Intervenors' lien rights.  Accordingly, the M&M Lienholders respectfully request that this Court (i) sustain their objections to the relevant portions of the Bankruptcy Court's R&R and reject the R&R to the extent necessary; (ii) deny OHA's Motion to Dismiss; and (iii) grant the M&M Intervenors such other and further relief to which they are justly entitled.

Dated:  September 2, 2016                     Respectfully Submitted,

                                              **ADAMS AND REESE LLP**

                                              /s/ *Robin B. Cheatham*
                                              Robin B. Cheatham (So. District No. 18036)
                                              One Shell Square
                                              701 Poydras Street, Suite 4500
                                              New Orleans, Louisiana 70139-4500
                                              Telephone: (504) 581-3234
                                              Fax: (504) 566-0210
                                              Email: robin.cheatham@arlaw.com

*Attorneys for Harvey Gulf International Marine, LLC and Hornbeck Offshore Services, LLC*


**LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD**

/s/ *Benjamin W. Kadden*
STEWART F. PECK
Louisiana Bar No. 10403, *pro hac vice*
CHRISTOPHER T. CAPLINGER,
Louisiana Bar No. 25357, *pro hac vice*
BENJAMIN W. KADDEN,
Texas Bar No. 24077542
JOSEPH P. BRIGGETT, *pro hac vice*
Louisiana Bar No. 33029
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: (504) 568-1990
Fax: (504) 310-9195
Email:  speck@lawla.com, ccaplinger@lawla.com
bkadden@lawla.com, jbriggett@lawla.com
*Attorneys for Warrior Energy Services Corporation, Fastorq, L.L.C., Stabil Drill Specialties, L.L.C., Workstrings International, L.L.C., and Superior Energy Services, L.L.C., d/b/a Superior Completion Services*


**LISKOW & LEWIS**

/s/ *Michael D. Rubenstein*
Michael D. Rubenstein (Bar #24047514)
First City Tower
1001 Fannin Street, Ste. 1800
Houston, Texas  77002
Telephone:  (713) 651-2953
Facsimile:  (713) 651-2952
Email: *mdrubenstein@liskow.com*
*Attorneys for Champion Technologies, Inc. and Offshore Energy Services, Inc.*

**SNOW SPENCE GREEN LLP**

*/s/ Kenneth Green*
Phil F. Snow
State Bar No. 18812600
philsnow@snowspencelaw.com
Kenneth Green
State Bar No. 24036677
kgreen@snowspencelaw.com
Ross Spence
State Bar No. 18918400
ross@snowspencelaw.com
Carolyn Carollo
State Bar No. 24083437
carolyncarollo@snowspencelaw.com
2929 Allen Parkway, suite 2800
Houston, TX 77019
Telephone: (713) 335-4802
Fax: (713) 335-4902
*Attorneys for Schlumberger Technology*
*Corporation, Wireline Control Services, LLC, Smith*
*International, Inc., M-I L.L.C. d/b/a M-I SWACO,*
*Canrig Drilling Technology, Ltd.*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing was served on this 2nd

day of September, 2016 upon all counsel of record via the Court's electronic case filing system

(ECF).

By: */s/ Kenneth Green*
Kenneth Green

I:\Client\SCHL1202-ATP Oil MAIN File\Bankruptcy\Adversary\Adversary #12-03443
NGP(OHA)\Pleadings\Objection to R&R\20160902 Objection to RR.doc