United States District Court
Southern District of Texas
**ENTERED**
March 09, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| ATP OIL & GAS CORPORATION | § | |
|    *Debtor.* | § | |
| | § | |
| | § | CIVIL ACTION H-16-2556 |
| OHA INVESTMENT CORPORATION, | § | ADVERSARY NO. 12-3443 |
|    *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| BENNU OIL & GAS, LLC, | § | |
|    *Defendant*. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is the Bankruptcy Court's Report & Recommendation ("R&R") recommending that the court grant plaintiff OHA Investment Corporation, f/k/a NGP Capital Resources Company's ("OHA") motion to dismiss the claims of Schlumberger Technology Corporation;, Wireline Control Services, LLC; Smith International, Inc., M-I LLC d/b/a M-I SWACO; Canrig Drilling Technology, Ltd.; Champion Technologies, Inc.; Offshore Energy Services, Inc.; Stabil Drill Specialties, LLC; Fastorq, LLC; Workstrings International, LLC; Superior Energy Services, LLC, d/b/a Superior Completion Services; Warrior Energy Services Corporation; Harvey Gulf International Marine, Inc.; and Hornbeck Offshore Services, LLC (collectively the "M&M Intervenors"). Dkt. 1 (B.R. Dkt. 326).[1] A hearing was held regarding both parties' limited objections to the R&R on November 29, 2016. Upon consideration of the R&R, the briefings, the parties' objections, the arguments made in the hearing, and the applicable law, the court is of the

---

[1] The court will refer to documents from the Bankruptcy Court's docket in Adversary Case No. 12-36187 as "B.R. Dkt."

opinion that the Bankruptcy Court's R&R should be ADOPTED IN FULL. The court, consistent with the Bankruptcy Judge's recommendation, GRANTS the motion to dismiss. B.R. Dkt. 310.

## I. BACKGROUND

This case arises from the ongoing bankruptcy proceedings of ATP Oil and Gas Corporation ("ATP").[2] B.R. Case No. 12-36187. Prior to its bankruptcy petition, ATP sold certain term overriding royalty interests ("ORRIs," also know as "Production Payments" or "Term Overriding Royalties") to OHA in June 2011, December 2011, and July 2012. OHA paid $65 million for the ORRIs. Dkt. 2 at 2; Dkt. 3 at 2. The ORRIs are for oil and gas production from outer continental shelf oil, gas, and mineral leases of submerged lands generally known as the Gomez and Telemark properties. *Id*. During ATP's bankruptcy proceedings, the M&M Intervenors, representing vendors, contractors, and subcontractors who provided services and materials to these oil, gas, and mineral leases, filed complaints in intervention in the proceedings. Dkt. 3 at 2. The M&M Intervenors' complaint seeks declaratory judgment and disgorgement of royalty payments on the ORRIs subject to M&M Intervenors' liens.[3] *Id*. The claims were made pursuant to the Louisiana Oil Well Lien Act (LOWLA). La. Stat. Ann. §§ 9:4860–9:4873. OHA moved to dismiss the M&M Intervenors' complaint under Federal Rule of Civil Procedure 12(b)(6). B.R. Dkts. 284, 310. Subsequently, the M&M Intervenors amended their complaint, and, accordingly, OHA amended its motion to dismiss, to which the M&M Intervenors responded. B.R. Dkts. 298, 299, 300, 303 (amended complaints); B.R. Dkts 284, 310 (motions to dismiss); Dkt. 3, Exs. A, B (responses to motions to dismiss).

---

[2] The nature of the bankruptcy case and the transactions between OHA and ATP for the ORRIs are more fully described in the Bankruptcy Court's Memorandum Opinion and R&R. Dkt. 1 at 1–2; B.R. Dkt. 293 at 2–5.

[3] In Louisiana, liens are referred to as "privileges." The two terms are used interchangeably herein.

On May 13, 2016, the Bankruptcy Court issued a Memorandum Opinion that held that, under LOWLA, the M&M Intervenors' liens attach to ORRIs "if (1) the liens were valid at the time of the transfer, and (2) OHA took the ORRIs with receiving notice of the liens as required by the safe harbor provision of La. Stat. Ann. § 9:4869(1)(a)." Dkt. 1 at 1–2 (citing to B.R. Dkt. 293 at 14). Based on this reasoning, if OHA purchased the ORRIs without the notice required by the safe harbor provision, the liens are extinguished. *Id.* The M&M Intervenors filed an amended complaint to plead that OHA had the required notice under the safe harbor provision. B.R. Dkt. 294  OHA updated its motion to dismiss to brief the court on the issue of notice. B.R. Dkt. 310. On August 19, 2016, the Bankruptcy Court issued its R&R, recommending that the district court grant OHA's motion to dismiss the M&M Intervenors' amended complaint because OHA did not have notice of the liens in the manner required by the safe harbor provision under LOWLA. Dkt. 1 (B.R. Dkt. 326).

OHA filed a limited objection to the reasoning in the R&R. Dkt. 2. The M&M Intervenors filed three objections to the R&R. Dkt. 3. Both parties responded to each others' objections, and OHA replied. Dkts. 4, 5, 6. On November 29, 2016, an oral hearing was held on the objections to the R&R. Dkt. 15.

## II. LEGAL STANDARD

### A. Standard of Review

The district court must issue the final judgment on a motion to dismiss in an adversarial proceeding involving state-law claims by two non-debtor parties who have not consented to the Bankruptcy Court's entry of a final judgment. *Stern v. Marshall*, 564 U.S. 462, 467, 131 S. Ct. 2594 (2011). As noted by the Bankruptcy Court, the M&M Intervenors' claims against OHA are subject to the constitutional limitations set forth in *Stern v. Marshall*. *Id.*; Dkt. 1 at 4. For claims of this nature, the Supreme Court has held that the district court should conduct a *de novo* review of the

3

Bankruptcy Court's report and recommendation before entering a final judgment, considering any timely filed objections. *See Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2168 (2014).

**B.     Motion to Dismiss**

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65 (2007). In considering a Rule 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). And, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 556.

### III. ANALYSIS

LOWLA provides statutory protections for oil field material and service providers that allows them to immediately assert a statutory lien on the properties that they service. La. Stat. Ann. Rev. Stat. § 9:4863; *see also* B.R. Dkt. 293 at 8. LOWLA also contains a safe harbor provision, which protect third-party purchases of hydrocarbons by requiring the lienholder to give notice of their lien prior to the purchase; otherwise the lien is extinguished. § 9:4863(1)(a).

4

The Bankruptcy Court's R&R recommends that the district court issue a final order dismissing the M&M Intervenors' complaint by concluding that the M&M Intervenors failed to give the required notice to OHA under LOWLA's safe harbor provision, and therefore the M&M Intervenors' liens are extinguished. Dkt. 1 at 5. The M&M Intervenors make three objections to this recommendation—in all three objections, they argue that OHA is not a purchaser of hydrocarbons so it is not entitled to LOWLA's safe harbor protection. Dkt. 3. Though not objecting to the outcome, OHA also offers a limited objection to the Bankruptcy Court's interpretation of LOWLA, arguing that the M&M Intervenors' complaint should be dismissed because the M&M Intervenors' liens should not attach to the ORRIs at all. Dkt. 2. The court has considered these four objections and concludes the objections should be OVERRULED.

A. **OHA's Limited Objection**

OHA argues that the M&M Intervenors' claim should be dismissed because "LOWLA simply does not permit the attachment of statutory liens to non-lessee interests." Dkt. 2 at 2. Therefore, OHA has offered a limited objection to the Bankruptcy Court's rationale in its R&R, which incorporated an earlier Bankruptcy Court Memorandum Opinion (B.R. Dkt. 293) that concluded that the M&M Intervenors' liens attached to the ORRIs. *Id*. OHA asks the court to consider the statutory language of LOWLA and its policy purpose and alter the rationale outlined in the R&R accordingly.

First, OHA argues that the court should look at the language that is missing from LOWLA. Dkt. 2 at 10. Specifically, OHA argues, if the Louisiana legislature intended for liens to attach to an ORRI, it would have carved out that privilege in the statutory language. *Id*. In the absence of any language to the contrary, OHA argues that only lessees, who are operating interest holders, are meant to be governed by the statutory privilege. Operating interests are defined in LOWLA as "giv[ing] the lessee . . . the right to conduct operations giving rise to the claimant's privilege." La Stat. Ann.

5

§ 9:4861(5)(a). OHA argues that this demonstrates that the Louisiana legislature intended to only attach the claimant's privilege to the lessee's interest because the privilege arises from the lessee's conduct. Dkt. 2 at 10.

An operating interest is burdened by the cost of production, but a royalty interest is cost-free profit. *See* B.R. Dkt. 293 at 9 (discussing the differences between an operating interest and a royalty interest); *see also* Dkt. 2 at 10. A royalty interest holder does not have the right to authorize or conduct operations; only the lessee can give the right to conduct operations. *Id*.; Dkt. 15 at 36. The definition offered in the statute is merely a definition of how oil field operations are conducted. *Id*. The court does not agree that this definition of when the lienholders' rights arise is meant to indicate that the lessee's interest is the only interest subject to a statutory lien, and the liens get extinguished if that interest is transferred to another party.

Second, OHA points to the provision in the statute that describes the parties excepted from the lienholders' privilege. Dkt. 2 at 9. Section 9:4863(C) states that: "The privilege does not affect . . . [t]he part of the hydrocarbons produced from an operating interest that is owned by a lessor, sublessor, overriding royalty owner, or other person who is not a lessee of the operating interest . . . ." Here, OHA argues that it qualifies for the exception as both an overriding royalty owner and as a non-lessee. Dkt. 6 at 3–4. Therefore, an order allowing the lien to attach to its interest would violate the plain language reading of this exception. "[W]here the statute's language is plain 'the sole function of the court is to enforce it according to its terms.'" *United States v. Ron Pair Enters.*, 489 U.S. 235, 241, 109 S. Ct. 1026 (1989). But, under Louisiana law, "words and phrases shall be read with their context . . . ." La. Stat. Ann. § 1:3. Therefore, the court will consider the context of this exception.

6

Both sides agree that an ORRI is a real property interest in the production of hydrocarbons. Dkt. 15 at 19, 30. A lien arises under LOWLA as soon as the service providers begin to work on the applicable hydrocarbon interest. La. Stat. Ann. § 9:4864. The M&M Intervenors' interest attached to ATP's entire operating interest *before* ATP carved out the ORRIs that it sold to OHA. Dkt. 4 at 6; B.R. Dkt. 293 at 10. The Bankruptcy Court properly considered the principle "that a person cannot convey more than is owned." B.R. Dkt. 293 at 10. Therefore, ATP simply did not own an unencumbered ORRI to transfer to OHA, and the mere fact of the transfer cannot extinguish the M&M Intervenors' interest.

Consider a hypothetical situation where ATP carved out and transferred a royalty interest first, and then the M&M Intervenors' lien arose after that transfer. A contextual reading of the statute with respect to this hypothetical situation leads to the conclusion that a lien cannot attach after the ORRI is severed, because the lessee who incurs that lien no longer owns the royalty interest. Dkt. 4 at 10. OHA objects to treating its claims any differently, even though the lien arose prior to the transfer, because it requires improperly reading a temporal limitation into the language of the statute. Dkt. 6 at 3. However, the court agrees with the Bankruptcy Court's reasoning, that interpreting the statute differently depending on whether the lien arises before or after the transfer, is merely reading the statute with the required context. The plain language of the statute, for instance, makes no mention of extinguishing liens with a transfer. However, the statute does specify extinguishing liens by failure to give notice. La. Stat. Ann.§ 9:4864(C). ATP could not sell an unencumbered ORRI to OHA, because ATP did not own an unencumbered ORRI. B.R. Dkt. 293 at 11–12.

Both parties also offer competing, though not dispositive, policy arguments in favor of their interpretations. Dkt. 3 at 11–12; Dkt. 4 at 10. OHA argues that allowing a lienholder's privilege to

7

attach to a royalty interest interferes with the practice of oil and gas operators selling royalty interests as a method of financing the development of the underlying lease. *Id*.; Dkt 15 at 27. However, this argument ignores the option to sell royalty interests *before* incurring the development costs. Selling royalty interests before the inception of statutory liens allows that interest to transfer free of liens while still enabling the financing of oil and gas development. The Bankruptcy Court observes a more significant problem with OHA's interpretation—if a royalty interest passes unencumbered, "the lessee could effectively extinguish any statutory privilege provided by LOWLA through a simple conveyance [of royalty interests]." B.R. Dkt. 293 at 12. This potential outcome makes a compelling argument for adopting the Bankruptcy Court's interpretation.

The court agrees with the Bankruptcy Court, that a party cannot convey what it does not own. Therefore, ATP could not convey ORRIs free of the M&M Intervenors' liens. OHA's limited objection is OVERRULED.

**B.    M&M Intervenors' Objections**

Though the M&M Intervenors agree with the R&R in concluding that their privilege attached to the ORRI prior to the conveyance to OHA, they object that OHA is entitled to invoke the safe harbor provision because (1) OHA is not a purchaser of hydrocarbons; and (2) protecting an ORRI purchaser under the safe harbor contravenes the purpose of LOWLA's relation-back doctrine. Dkt. 3 at 4.

*1. OHA is not entitled the safe harbor provision under LOWLA*

In their first and second objections, the M&M Intervenors argue that OHA is not entitled to the safe harbor provision under LOWLA. Dkt. 3 at 5–7. The safe harbor provision of LOWLA protects third-party purchasers of hydrocarbons from the assertion of an unanticipated lienholder's statutory privilege by requiring that the lienholder give notice of its privilege prior to the purchase.

8

La. Stat. Ann. § 9:4864(C). In its interlocutory Memorandum Opinion, the Bankruptcy Court opined that "[a] royalty interest is by necessity an interest in the sale of hydrocarbons, because every sale of hydrocarbons requires a royalty payment to the holder of the royalty interest" and therefore, an ORRI holder is entitled to invoke the safe harbor provision of LOWLA. B.R. Dkt. 293 at 14. Relying on this interpretation that a purchaser of an ORRI is a purchaser of a hydrocarbon, the Bankruptcy Court ruled that the M&M Intervenors' liens were extinguished because of their failure to give notice to OHA under the safe harbor provision. Dkt. 1.

In their first objection, the M&M Intervenors make an umbrella argument that the Bankruptcy Court interchangeably called an ORRI an "interest in gross production," while simultaneously calling OHA "a purchaser of hydrocarbons." Dkt. 3 at 6. Therefore, the M&M Intervenors allege that OHA cannot have an interest "in" hydrocarbons while also being a purchaser "of" hydrocarbons. The M&M Intervenors attempt to buttress this distinction with their second objection that hydrocarbons cannot be owned before they are severed from the ground.[4]

As an initial matter, OHA responds to this objection by claiming that this issue is not disputable because the Agreed Final Judgment order binds both sides to the interpretation that OHA purchased a share of hydrocarbon production. Dkt. 5 at 5–6. However, this is a misstatement of the M&M Intervenors' objection. This court interprets M&M Intervenors' objection as a statement that a share in royalties from future production is not the same as a purchase of a hydrocarbon, because the hydrocarbon was not severed from the ground at the time of the purchase. Dkt. 3 at 4–6.

---

[4] The court agrees with OHA that this objection appears to be in conflict with the M&M Intervenors' arguments in response to OHA's objection. Dkt. 6 at 2. Here, the M&M Intervenors argue that OHA is not entitled to LOWLA's safe harbor provisions because it is not a purchaser of hydrocarbons, while simultaneously arguing that LOWLA's authority to attach liens to hydrocarbons should apply to OHA's ORRIs. *Id.*

9

In their second objection, the M&M Intervenors advance the argument that OHA is not a purchaser of hydrocarbons because the hydrocarbons were not severed from the ground at the time ATP transferred the royalty interest to OHA. Dkt. 3 at 8. Under Louisiana law, a party cannot own hydrocarbons in the ground, but a party can own the right to extract hydrocarbons. Dkt. 3 at 7. The argument that a royalty interest owner is not a purchaser of hydrocarbons because they have not been severed from the ground is unpersuasive. For instance, even a purchaser of discrete quantities of hydrocarbons, who are undisputedly purchasers of hydrocarbons protected by the safe harbor provision, can purchase hydrocarbons prior to their severance. *See, e.g.,* Dkt. 15 at 10 (describing how a purchase of discrete volumes of hydrocarbons can occur on a "rolling basis" during their extraction pursuant to a purchasing contract).

Further, OHA points to the statutory language that hydrocarbons are "sold or otherwise transferred" to support its contention that hydrocarbons may be transferred to a purchaser in a manner other than by sale in discrete quantities. La. Stat. Ann. § 9:4869. Generally, lien statutes are to be construed strictly against the party claiming a lien. *Phillips Petroleum Co. v. Best Oilfield Servs., Inc.*, 48 F.3d 913, 916 (5th Cir. 1995) (citing to *Amoco Prod. Co. v. Horwell Energy*, 969 F.2d 146, 148 (5th Cir.1992)). The M&M Intervenors advance the theory that the lien statute should be interpreted in a "reasonable construction." Dkt. 15 at 9. Here, using either a reasonable or strict construction of the statute, the court concludes that even though the lessee may be transferring its property interest prior to the actual severance of the hydrocarbon from the ground, that transfer falls within the description of "otherwise transferred.'"

Therefore, the court OVERRULES these two objections and adopts the Bankruptcy Court's interpretation that OHA, as a purchaser of an ORRI, is a purchaser of hydrocarbons.

> *2. Protecting an ORRI holder with safe harbor is contrary to the purposes of LOWLA's relation-back doctrine.*

The M&M Intervenors object that the Bankruptcy Court's interpretation is at odds with the LOWLA's statutory purpose of protecting service and material providers because it undermines the relation-back doctrine. *Id*.; Dkt. 15 at 9. LOWLA's purpose is to protect vendors, contractors, and subcontractors by ensuring their privilege arises as soon as they provide services or materials to a well site. La. Stat. Ann. § 9.4869(A); Dkt. 3 at 11. The court agrees with the M&M Intervenors that the relation-back doctrine, where the lien inception date goes back to the date that services begin, is a key element of achieving the policy purposes of LOWLA. Dkt. 20 at 15. The court has already addressed some of the competing arguments of the parties in interpreting LOWLA to advance its statutory purpose with respect to OHA's objection. *See supra* at 7–8.

This objection ignores the stated statutory purpose of protecting bona fide third-party purchasers with a safe harbor provision, in spite of the relation-back doctrine. Dkt. 5 at 7. LOWLA requires that the purchaser of the hydrocarbon be "notified of the privilege of the claimant" prior to the transaction, otherwise the privilege is extinguished. La. Stat. Ann. § 9.4869(A)(1)(a). The M&M Intervenors argue that applying the notice requirement is an improper "artificial barrier" to enforcing their liens, but the court disagrees, and finds this a clear statutory barrier. Dkt. 15 at 24.

One of the M&M Intervenors conceded at oral arguments that "[n]o specific notice was delivered by my client of the existence of an inchoate privilege that had incepted prior to it receiving its override and paying the purchase price." Dkt. 15 at 13; *see also* Dkt. 5 at 3 (collectively conceding that the M&M Intervenors did not provide this type of notice). The M&M Intervenors argue that OHA could have performed basic due diligence before purchasing the ORRI to learn of the statutory liens. Dkt. 3 at 13; Dkt. 15 at 17. At the oral hearing, the M&M Intervenors also made

compelling arguments about the potential pragmatic difficulties of learning about the sale of an ORRI and providing notice to the purchaser. Dkt. 15 at 12–13, 49. However, OHA made equally compelling arguments regarding the difficulty of conducting a due diligence review of the real property records since these liens are not required to be recorded. Dkt. 15 at 19–20, 38.

In light of these competing pragmatic considerations, the court must rest its decision on the plain language of LOWLA. As the Bankruptcy Court observed, LOWLA does not specify a notice procedure. Dkt. 1 at 8. The applicable statutory language states that the privilege is extinguished "if the transferee pays for [the hydrocarbons] before he is notified of the privilege by the claimant." La. Stat. Ann. § 9:4869(A)(1)(a). Though the statute does not require a specific form of notice, it directly states the purchaser should be given notice *by the claimant*. The Bankruptcy Court opines that this is more like an actual notice requirement than the due diligence approach advocated by the M&M Intervenors. Dkt. 1 at 8–9. The court also observes that interpreting the notice requirement to include some form of notice delivered by the lien claimant to the purchaser is aligned with the underlying objectives of the safe harbor provision of LOWLA—to protect purchasers of discreet volumes of oil from conducting onerous due diligence searches. Dkt. 1 at 9 (citing to B.R. Dkt. 316 at 11 "The purpose of the safe harbor protections afforded to bona fide third-party purchasers of hydrocarbons under § 4869 is thus to shift to the lien claimant . . . the burden of providing notice . . . or risk losing the lien..").

Because OHA was not given notice by the M&M Intervenors, OHA is protected by the safe harbor provision of LOWLA and the M&M Intervenors' lien against OHA is extinguished. The M&M Intervenors third objection is OVERRULED.

## IV. CONCLUSIONS

The R&R (Dkt. 1) is ADOPTED IN FULL. OHA's motion to dismiss the M&M Intervenors' claims is GRANTED. The M&M Intervenors' claims are DISMISSED WITH PREJUDICE.

Signed at Houston, Texas on March 9, 2017.

_____
Gray H. Miller
United States District Judge